89 So.2d 498 (1956)
James DEMETREE and Georgia Bell Demetree, Appellants,
v.
STATE of Florida ex rel. John D. MARSH, County Solicitor of Dade County, Florida, Appellee.
Supreme Court of Florida. Special Division B.
September 12, 1956.
*500 Ernest E. Roberts and Caldwell, Parker, Foster, Wigginton & Miller, Miami, for appellants.
Richard W. Ervin, Atty. Gen., and Jos. P. Manners, Asst. Atty. Gen., for appellee.
THORNAL, Justice.
Appellant James Demetree, who was a defendant below, seeks reversal of an order of the Chancellor adjudicating him to be in contempt of court and sentencing him to six months in jail for violation of an injunction order in a proceeding brought by appellee to restrain the conducting of a nuisance.
The questions to be disposed of on appeal are whether the contempt proceeding was for a civil or criminal contempt and the quantum of proof necessary to establish the guilt of the appellant.
On May 25, 1954, appellee John D. Marsh, as County Solicitor of Dade County, and in the name of the State of Florida, filed in the Circuit Court of Dade County his amended complaint to enjoin an alleged nuisance being conducted by appellants at the Demetree Hotel in Miami. Allegedly, the nuisance consisted of unlawfully operating, maintaining and conducting upon the premises of the hotel "a house and place of prostitution, assignation and lewdness".
After hearing, the Chancellor entered a temporary restraining order enjoining the appellants "and any and all persons claiming by, through and under them" from using and operating the property involved "as a house and place of lewdness, assignation and prostitution".
On May 23, 1956, the County Solicitor filed a petition for a rule nisi against appellant James Demetree alleging that he had "unlawfully, knowingly and contemptuously violated" the injunction order by "operating, maintaining and conducting the said property as a house and place of lewdness, assignation and prostitution". The rule issued and in response to the rule Demetree denied the allegations of the petition. After hearing extensive testimony, the Chancellor concluded that the injunction order had been violated by Demetree, that he had "failed and refused to obey the order" of the court granting the injunction, and upon finding him guilty of contempt of the court, the Chancellor thereby ordered that Demetree be punished "by being confined in the Dade County Jail for a period of six months".
Reversal of this order adjudicating appellant James Demetree to be in contempt of court and sentencing him to a jail sentence is sought by this appeal.
Georgia Bell Demetree, who was a party-defendant in the original injunction proceeding, is not involved in this appeal. We, therefore, refer only to appellant Demetree as having reference to James Demetree.
Appellant contends that the contempt proceeding below was for an alleged criminal contempt, that the rules of Criminal Law apply with reference to the quantum of proof necessary to convict and that the evidence was insufficient to establish the guilt of the contemnor beyond a reasonable doubt.
Appellee contends that the proceeding was civil rather than criminal in nature but that even if it were criminal contempt, *501 the proof was adequate to sustain guilt when measured by the standards of the Criminal Law.
One writer has suggested that "Contempt of court is the Proteus of the legal world" in that it assumes an almost infinite variety and diversity of forms. Be this as it may, it is nonetheless important in particular cases to undertake to identify the nature of the proceeding because of the drastic nature of punishment oftentimes administered and because of the potentials for impinging upon the fundamental rights of a party by the exercise of the power. We ourselves have suggested that the power to punish for contempt should be cautiously and sparingly exercised. Seaboard Air Line Ry. Co. v. Tampa Southern R. Co., 101 Fla. 468, 134 So. 529. Despite this admonition of caution, which historically our courts have observed, the power to punish for violation of a valid subsisting order of a court of competent jurisdiction necessarily inheres in our judicial system. This is so for the simple reason that without the power our judicial system would become a mere mockery for a party to a cause could make of himself a judge of the validity of orders which had been issued and by his own acts of disobedience set them aside, thereby ultimately producing the complete impotency of the judicial process. There can therefore be no doubt that the courts are clothed with power to punish contempt for violation of their orders and they have this authority without the necessity of referring the issues to another tribunal or to a jury in the same tribunal.
Contempt of court is generally classified as being either civil or criminal in nature and direct or indirect, the latter being dependent upon whether the contemptuous conduct is committed in the presence or out of the presence of the court. In the case before us the issue is squarely presented as to whether the contempt alleged was civil or criminal. The distinction is important because of a difference in quantum of proof necessary to convict as well as the nature of the punishment that may be administered upon a determination of guilt.
In its broadest aspects a civil contempt order is sought by a party to the cause and entered by the court for the private benefit of the offended party. While imprisonment may be adjudged in a civil contempt proceeding, it is coercive rather than punitive in nature. Customarily when imprisonment is ordered for a civil contempt its continuance is made contingent upon compliance with the order of the court and when the contemnor has so complied he is released from prison. The sentence is usually therefore indefinite and not for a fixed term. It is for this reason that in civil contempt it has been said that the contemnor "`carries the key of his prison in his own pocket.'" In re Nevitt, 8 Cir., 117 F. 448, 451, 461, 54 C.C.A. 622. He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.
In a civil contempt proceeding an offended party to the cause is primarily seeking relief, personal and private to himself, as distinguished from punishment for conduct offensive to the public or disrespectful to the court and its authority. On the other hand, a contempt proceeding criminal in nature is instituted solely and simply to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court. Customarily when imprisonment is ordered it is generally for a fixed term and is administered as punishment for an act committed rather than as coercion to compel the contemnor to do something which he has theretofore failed and refused to do. Usually a criminal contempt proceeding is brought in the name of the public or in behalf of the public while a civil contempt proceeding is brought in the name of an individual party seeking redress for a personal wrong committed *502 against him in violation of a court's decree.
Measured by the rules and the principles above announced it is clear to us that the instant proceeding was one for criminal contempt. The appellee who obtained the injunction allegedly violated did so in his official capacity as County Solicitor in the name of the State of Florida. He did not seek the redress of a personal wrong or an offense committed against him as a private citizen. The alleged contemptuous conduct was not committed against the appellee as an individual but was allegedly committed against the public at large.
Having decided that the contempt proceeding was criminal in nature we are next led to the conclusion that in a criminal contempt proceeding the contemnor is presumed to be innocent until proved guilty beyond a reasonable doubt and he cannot be compelled to testify against himself. This is obviously so for the reason that the character and purpose of the adjudication of guilt, if it should follow, is for punishment rather than mere coercion. In the case before us appellant contends that the Circuit Judge in effect found him guilty of the offense condemned by Section 796.01, Florida Statutes, F.S.A. which reads as follows:
"Whoever keeps a house of ill fame, resorted to for the purpose of prostitution or lewdness, shall be punished by imprisonment not exceeding one year."
In this the appellant is in error. The injunction was obtained pursuant to the provisions of Section 823.05, Florida Statutes, F.S.A., which defines as a nuisance "any house or place of prostitution, assignation, lewdness" and which authorizes the abatement of the nuisance in accordance with Section 64.11, Florida Statutes, F.S.A., by a proceeding in the name of the State on the relation of a County Solicitor, a State's Attorney, or even a private citizen. Contrary to the contentions of the appellant the County Solicitor was not bound to prove each element of the offense defined by Section 796.01, Florida Statutes. The original complaint announced that the appellee was proceeding under Sections 64.11 and 823.05, supra. We have held in such a proceeding the public is actually the plaintiff. The wrong to be stopped, that is, the nuisance, is an offense against the public and the Statutes are aimed at abating such nuisances. See Nelson v. State, 84 Fla. 631, 94 So. 680; and Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 52 A.L.R. 51.
We finally come to the point to determine whether the evidence before the trial judge sustained the guilt of the appellant Demetree beyond a reasonable doubt. The trial judge heard all of the witnesses and was in a position to determine their credibility and to evaluate the weight to be given to their testimony much better than are we. We have reviewed all of the testimony submitted to the trial court and find implicit in the admissible evidence which was received adequate basis for concluding that the guilt of the appellant was established beyond a reasonable doubt. Although there are conflicts, there was certainly adequate if not abundant evidence upon which the guilt of appellant could easily be concluded.
We find therefore that even measured by the standards of the Criminal Law the adjudication of the contempt was well founded.
In considering this opinion as a precedent we suggest a reference to a particularly well-prepared article entitled Contempt of Injunctions, Civil and Criminal, by Joseph Moskovitz, 43 Col. Law Rev. 780, and the decision of the Supreme Court of the United States in Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A., N.S., 874. The decision last mentioned is *503 probably the most often quoted precedent on the law of contempt.
Finding as we do, therefore, we conclude that there was no error in the ultimate judgment of the trial court and his judgment is therefore 
Affirmed.
TERRELL, Acting C.J., and ROBERTS and O'CONNELL, JJ., concur.