125 So.2d 337 (1960)
LOCAL LODGE NUMBER 1248 OF INTERNATIONAL ASSOCIATION OF MACHINISTS et al., Appellants,
v.
ST. REGIS PAPER COMPANY, a corporation, Appellee.
No. C-251.
District Court of Appeal of Florida. First District.
December 20, 1960.
Rehearing Denied January 6, 1961.
*339 Booth & Taylor and Schwartz, Proctor, Bolinger & Austin, Jacksonville, for appellants.
Adair, Ulmer, Murchison, Kent & Ashby, Jacksonville, and Jones & Harrell, Pensacola, for appellee.
WIGGINTON, Chief Judge.
This is an interlocutory appeal from an order in chancery by which the chancellor denied defendants' several motions to dissolve a temporary injunction theretofore issued without notice, to dismiss the complaint on which the temporary injunction was based, to discharge a rule to show cause why the defendant labor union and 85 of its members should not be adjudged to be in contempt of court for violating the terms and provisions of the temporary injunction, and adjudging the named members of the union to be in contempt of court for their violation of the injunctive order.
The cause is now before the court on a series of motions filed by appellee paper company by which it attacks most of the assignments of error filed by appellants, together with those portions of appellants' brief based upon the assignments of error under assault. Appellee also seeks dismissal of the appeal for the alleged failure of appellants to properly comply with the rules of procedure pertaining to interlocutory appeals.
Appellee paper company filed in the Circuit Court of Duval County a complaint by which it sought to enjoin appellant labor union and certain of its members who were appellee's employees from committing alleged acts of trespass, from interfering with appellee's use of its plant by itself and other employees and from authorizing the continuance of an existing interruption of work in the plant. Upon ex parte hearing the chancellor issued without notice a temporary injunction by which it restrained and enjoined the individually named appellants from occupying appellee's premises for any reason other than the performance of their regularly assigned duties; from occupying the premises in any manner other than that specifically authorized by appellee; from interfering with the ingress or egress to and from appellee's premises by any of its employees, and enjoining and restraining appellant labor union from authorizing the continuance of the existing interruption of work at appellee's plant.
Subsequent to the issuance of the foregoing injunction appellee filed in the cause a petition for issuance of a rule commanding appellants to appear before the court and show cause why they should not be adjudged in contempt for their wilful violation of the terms and provisions of the temporary injunction. It was at this point in the proceedings that appellants filed in *340 the cause their several motions by which they prayed for an order dissolving the temporary injunction, dismissing the complaint and discharging the rule to show cause theretofore issued and served on them. After hearing before the court during which considerable testimony was taken, the chancellor entered the order which is now the subject of this interlocutory appeal. With respect to the injunctive aspects of the proceeding the order denied appellants' motion to dissolve the temporary restraining order and to dismiss the complaint. With respect to the contempt aspects of this proceeding, the chancellor specifically found that inasmuch as all 85 individual appellants "had notice and knowledge of the provisions of said restraining order and acted, at their peril, in concert to willfully disobey it, they are equally guilty, in fact and in law, of contempt, but they offer substantially nothing in justification or mitigation. Such circumstances impose upon the Court a judicial duty to impose such punishment in the case as seems appropriate to insure compliance with its orders and remove temptation to disobey same." Based upon the foregoing finding the order appealed adjudged that each of the 85 named appellants separately and severally are in contempt of court "for their respective wilful failure and refusal to obey and comply with the said Temporary Restraining Order, dated August 2nd, 1960, and as punishment for their respective contempt, * * * [they] and each and every one thereof separately and severally, shall pay to the Sheriff of this Court, for deposit into the Fine and Forfeiture Fund of Duval County, Florida, the sum of Fifteen Dollars ($15.00) within fifteen (15) days from the date hereof, and in the event any thereof default in payment thereof within the time so specified herein, then the person, or persons, so defaulting, and each and every thereof, shall be forthwith taken into the custody of said Sheriff, and confined in the County Jail of Duval County, Florida, for a period of thirty-six (36) consecutive hours from the time said confinement is commenced. The Clerk of this Court is hereby directed to issue commitments accordingly."
Upon appellants' motion the chancellor entered a subsequent order which provided that further proceedings under the order appealed be stayed upon the condition that (1) each of the individual appellants who prosecutes an appeal from that part of the order adjudging him to be in contempt shall file a bail bond in the amount of $15; and (2) that with respect to an appeal from the remaining portions of the order the defendants shall jointly file a supersedeas bond in the sum of $1,500 payable to appellee paper company conditioned upon payment of the costs of the appeal and the costs which have accrued in the trial court in the event the order is affirmed.
Appellant labor union and its several members who are adjudged to be in contempt of the trial court have filed in support of their interlocutory appeal 95 assignments of error. Two of the questioned assignments of error numbered 2 and 5 allege that the trial court erred in issuing the rule to show cause and in denying appellants' motion to discharge or quash it. Assignment of error numbered 6 questioned the action of the trial court in setting aside its former order dismissing defendant labor union from the rule to show cause and in reinstating the rule against the union for further proceedings. Eighty-four of the remaining assignments of error numbered 10 to 93, inclusive, are identical except for names, there being one assignment of error on behalf of each of the 84 individual appellants by which they charge that the court erred in adjudging them to be in contempt for a wilful failure or refusal to comply with the restraining order. Thus we see that 87 of the 95 assignments of error relate exclusively to that phase of the proceeding taken in the lower court dealing with the question of appellants' contempt for violating the terms and provisions of the temporary injunction. Appellee has moved to strike each of these *341 assignments of error, to dismiss that phase of this interlocutory appeal dealing with the contempt proceedings and to strike from appellants' brief those points relating to this phase of the case.
The order appealed is properly divisible into two parts. One part deals exclusively with that phase of the proceeding relating to the temporary restraining order. The remaining portion deals exclusively with that phase relating to the question of contempt. Such an order is categorized under our system of procedure as a split or severable decree.[1] That part of the order denying defendants' motion to dissolve the temporary injunction and dismiss the complaint is interlocutory in character and properly reviewable under Rule 4.2, F.A.R., 31 F.S.A., relating to interlocutory appeals. That portion of the order adjudging defendants to be in contempt for violation of the terms and provisions of the temporary injunction is a final judgment and is reviewable on appeal under the applicable rules of appellate practice as they apply to the facts in this case.
In passing upon appellee's motion to strike the 87 assignments of error relating to the contempt phase of the order appealed it is imperative that we first determine whether the contempt of which appellants have been adjudged guilty is civil or criminal in character. The necessity for such a determination is obvious. If the judgment for contempt is civil in nature, the approved method of obtaining appellate review is by interlocutory appeal as has been done by the appellants in the case.[2] If, on the other hand, the contempt is criminal in nature, the judgment is considered to be a final judgment as in any other criminal action[3] and is reviewable only under Part 6 of the Florida Appellate Rules relating to criminal appeals.[4] In an interlocutory appeal the appellant is restricted to a period of sixty days from the rendition of the order within which to file its notice of appeal, and the only interested parties on appeal are the parties to the cause. In criminal appeals the appellant is allowed 90 days from the rendition of the order within which to file his notice of appeal, and since the State is a party in interest, a copy of the notice of appeal is required to be served on the county prosecuting officer and the State afforded an opportunity to appear and defend the appeal through the offices of the Attorney General.
The landmark decision in Florida dealing with the distinction between civil and criminal contempt is the Seaboard Airline Ry. Co. case.[5] There our Supreme Court quoted with approval and established as the law of Florida the principles enunciated by the Supreme Court of the United States in the Gompers case[6] as follows: "`Contempts are neither wholly civil nor altogether criminal. And "it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both." * * * It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority *342 of the court. * * * There is another important difference. Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause. * * * Inasmuch, therefore, as proceedings for civil contempt are a part of the original cause, the weight of authority is to the effect that they should be entitled therein. * * * We have already shown that in both classes of cases there must be allegation and proof that the defendant was guilty of contempt, and a prayer that he be punished. The classification, then, depends upon the question as to whether the punishment is punitive, in vindication of the court's authority, or whether it is remedial, by way of a coercive imprisonment, or a compensatory fine payable to the complainant. Bearing these distinctions in mind, the prayer of the petition is significant and determinative.'" The most recent case of our Supreme Court approving the rule in Gompers is the decision rendered in Demetree[7], in which the Gompers rule was paraphrased by Justice Thornal as follows:
"In its broadest aspects a civil contempt order is sought by a party to the cause and entered by the court for the private benefit of the offended party. While imprisonment may be adjudged in a civil contempt proceeding, it is coercive rather than punitive in nature. Customarily when imprisonment is ordered for a civil contempt its continuance is made contingent upon compliance with the order of the court and when the contemnor has so complied he is released from prison. The sentence is usually therefore indefinite and not for a fixed term. It is for this reason that in civil contempt it has been said that the contemnor `carries the key of his prison in his own pocket.' In re Nevitt, 8 Cir., 117 F. 448, 451, 461, 54 C.C.A. 622. He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.
"In a civil contempt proceeding an offended party to the cause is primarily seeking relief, personal and private to himself, as distinguished from punishment for conduct offensive to the public or disrespectful to the Court and its authority. On the other hand, a contempt proceeding criminal in natrue is instituted solely and simply to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court. Customarily when imprisonment is ordered it is generally for a fixed term and is administered as punishment for an act committed rather than as coercion to compel the contemnor to do something which he has theretofore failed and refused to do. Usually a criminal contempt proceeding is brought in the name of the public or in behalf of the public while a civil contempt proceeding is brought in the name of an individual party seeking redress for a personal wrong committed against him in violation of a court's decree."
Applying the principle set forth in the foregoing authorities we find that the contempt proceeding in this case was instituted for the purpose of vindicating the authority of the court and to punish for conduct offensive to the public in violation of the court's order. The penalty consisting of payment of a fine or imprisonment in jail for a period of 36 consecutive hours is obviously not remedial and imposed for the purpose of coercing compliance with the court's order, but is punitive in character imposed on the individual appellants for committing an act in direct violation of the prohibitions contained in the temporary injunction. *343 The term of imprisonment prescribed is of definite rather than of indefinite duration. Under these circumstances it cannot be said that upon the entry of the order appellants carry a key of their prison in their pocket by which the prison doors could be opened upon their compliance with a coercive provision of the order which they violated. This is one of the attributes of civil as distinguished from criminal contempt. For a most comprehensive elucidation of the criteria which distinguishes civil from criminal contempt reference is made to the excellent article on that subject appearing in Columbia Law Review, Vol. XLIII (1943).
For the foregoing reasons we conclude and hold that the judgment for contempt rendered against the appellants in this case is criminal in character and is not reviewable by interlocutory appeal. The assignments of error pertaining to that phase of the order dealing with the question of contempt are therefore stricken, the points on appeal as stated in the brief relating to the same subject are likewise stricken and the appeal is dismissed as to that part of the order dealing with the contempt features of the case in the trial court. This dismissal shall be without prejudice to the rights of the individually named appellants to prosecute a joint appeal from the judgment of contempt rendered against them in accordance with Part 6 of the Florida Appellate Rules.
By assignments of error numbered 1, 7, 8 and 9 appellants have questioned the propriety of other interlocutory orders entered by the chancellor prior to the entry of the order appealed. Although an appeal from a final judgment or decree opens the entire record and permits appellant to assign as error any interlocutory orders or rulings made by the trial court during the course of the proceeding, this is not true with respect to appeals from interlocutory orders. An interlocutory appeal brings to the appellate court for review only the specific order or orders described in the notice of appeal, and the appellate court is precluded from considering the correctness of any other interlocutory orders or rulings not so described and designated.[8] It follows that appellee's motion to strike the above numbered assignments of error, as well as the points on appeal which come within their scope, is granted and the appeal is dismissed as to the interlocutory orders and rulings not specifically described and designated in the notice of appeal filed herein.
The last two assignments of error filed by appellants question the excessiveness of the bailbonds required to be given by the individually named appellants as a condition of the stay of the proceedings pending appeal, and in requiring appellants to furnish a separate supersedeas bond with respect to their appeal from that part of the questioned order dealing with the injunctive phases of the proceeding in the trial court. All questions relating to excessiveness as well as to the reasonableness of the terms and conditions of supersedeas imposed by a trial court in connection with appeals taken from interlocutory or final judgments or decrees in both civil and criminal actions are reviewable only by motion filed in the appellate court under Rule 5.10 and 6.15, subds. d, e, F.A.R. Such matters are not subject to review by assignment of error on the appeal. It accordingly follows that appellee's motion to strike assignments of error No. 94 and 95 is granted, the points on appeal relating to the subject of supersedeas and bail pending appeal are stricken and with respect to such points the appeal is dismissed.
Appellee has also moved to strike appellants' entire brief and dismiss the appeal because of their failure to properly *344 comply with the rules of appellate practice which require that the brief contain divisions for each of the points involved on appeal and requiring that specific assignments of error from which the points argued arise should be stated.[9] It has been repeatedly held that a brief which fails to state the assignments of error on which each point on appeal is predicated does not comply with the mandatory requirements of the rule and renders the brief vulnerable to a motion to strike.[10] The burden should not be cast upon this court to grope through the assignments of error filed by appellants for the purpose of determining that the points on appeal are clearly supported by the assignments as a matter of law. Appellee's motion to dismiss the appeal is denied, but the motion to strike appellants' brief is granted with leave to file an amended brief in accordance with the requirements of this opinion within 20 days from the filing hereof.
STURGIS and CARROLL, DONALD, JJ., concur.
NOTES
[1] Lewis v. Lewis, Fla. 1953, 66 So.2d 260; 30 C.J.S. Equity § 582, p. 974.
[2] Dykes v. Dykes, Fla.App. 1958, 104 So.2d 598; State ex rel. Carroll v. Sullivan, 160 Fla. 115, 33 So.2d 735.
[3] Union Tool Co. v. Wilson, 259 U.S. 107, 42 S.Ct. 427, 66 L.Ed. 848.
[4] Lewis v. Lewis, Fla. 1955, 78 So.2d 711; Pennekamp v. Circuit Court, etc., 155 Fla. 589, 21 So.2d 41; Wells v. State, Fla. 1949, 38 So.2d 464.
[5] Seaboard Airline Ry. Co. v. Tampa Southern R. Co., 101 Fla. 468, 134 So. 529, 532.
[6] Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797.
[7] Demetree v. State, Fla. 1956, 89 So.2d 498, 501.
[8] Central & Southern Florida Flood Control Dist. v. Dupuis, Fla.App. 1959, 109 So.2d 596; Glass v. Layton, 140 Fla. 522, 192 So. 330; Prall v. Prall, 58 Fla. 496, 50 So. 867, 26 L.R.A.,N.S., 577.
[9] Rule 3.7, subd. f(4), F.A.R.
[10] Axtell v. Lyons, Fla.App. 1958, 105 So.2d 610; Redditt v. State, Fla. 1955, 84 So.2d 317.