WIGGINTON, Chief Judge
(dissenting).
This cause is before the court on a motion filed by the Attorney General, acting for and on behalf of the State of Florida, to dismiss this appeal.
The appellants are individual members of the above entitled labor union and were adjudged by the Circuit Court of Duval County to be guilty of contempt by reason of their disobedience of the terms and provisions of a temporary restraining order entered in a civil action pending in that court. Appellants first sought review of the judgment of contempt by interlocutory appeal to this court. It was there held that the contempt of which appellants had been adjudged guilty was criminal as distinguished from civil in character, and that the appropriate procedure for seeking appellate review of the judgment entered against them is as prescribed by Part VI of the Florida Appellate Rules relating to appeals in criminal cases.[1] The interlocutory appeal was accordingly dismissed without prejudice to the rights of the appellant to take an appeal from the judgment of conviction in accordance with the procedure mentioned in the opinion. Appellants thereupon filed their notice of appeal from the judgment of conviction, and are now seeking appellate review of that judgment in accordance with the procedure outlined in Part VI of the Florida Appellate Rules. The Attorney General has entered the case on behalf of the State of Florida and moves to dismiss the appeal upon the sole contention that appeals from judgments of criminal contempt are not reviewable in accordance with the procedure set forth in Part VI of the Florida Appellate Rules relating to appeals in criminal cases.[2]
Before proceeding to a determination of the question involved, it will be helpful to consider the nature of criminal contempt in its relationship to crimes generally. A crime is defined as an offense against the public pursued by the sovereign.[3] Simi *36 larly, proceedings at law for criminal contempt have been held to be between the public and the defendant, and are not a part of the original cause.[4] A contempt proceeding criminal in nature is instituted solely and simply to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of court. When imprisonment is ordered it is generally for a fixed term and is administered as punishment for an act committed in the same manner as conviction for any other criminal offense.[5]
The Attorney General does not question this court’s holding that the contempt of which appellants have been adjudged guilty is criminal as distinguished from civil in character. In the early case of Crews our Supreme Court held that a proceeding for contempt is a criminal proceeding in nature and is to be prosecuted by the rules governing cxdminal prosecutions.[6] In the subsequent case of Giblin our Supreme Court reiterated the rule that criminal con-tempts are to be dealt with and tried in a manner analogous to criminal proceedings.[7]
In the Pennekamp case the appellants were adjudged guilty of criminal contempt by the Circuit Court of Dade County. They sought review of the judgment by appeal in accordance with the procedure set forth in the statute governing appeals in criminal cases, which statute has now been superseded by Part VI of the Florida Appellate Rules. As in the case now on review, the Attorney General appeared in the Pennekamp case on behalf of the State of Florida and moved to dismiss the appeal on the sole ground that the judgment of criminal contempt was not reviewable in accordance with the statutory procedure relating to appeals in criminal cases. The motion to dismiss was denied by the Supreme Court upon the holding that contempt proceedings are criminal in nature, and under the court rule then in effect all appeals in criminal cases shall be taken in conformity with the procedure set forth in the statute relating to appeals in criminal cases.[8]
In the Lewis case later decided by the Supreme Court appellant sought review of an order adjudging him to be guilty of criminal contempt for violating an injunction issued in a civil case. He appealed in accordance with the procedure prescribed by the statute relating to appeals in criminal cases. The propriety of the procedure followed by appellant seeking review of the judgment of contempt was specifically passed upon and approved by the court.[9]
In the Gompers case appellant members of a labor union were adjudged guilty of a criminal contempt for violating an injunction issued in a civil action. On appeal the Supreme Court of the United States, speaking through Mr. Justice Holmes, said: “These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech. So truly are they crimes that it seems to be proved that in the early law they were punished only by the usual criminal procedure, 3 Transactions of the Royal Historical Society, N.S., p. 147 (1885), and that, at least in England, it seems that they still may be and preferably are tried in that way.” [10] Likewise in the Bessette case the Supreme Court of the United States held that a judgment of criminal contempt for violating the provi *37 sions of an injunction issued in a civil action is criminal in nature, and should be reviewed as final decisions in other criminal cases.[11]
The Attorney General urges that acts of criminal contempt cannot be classed as crimes for the reason that under our constitution every person charged with a crime is entitled to a trial by jury, whereas no such trial is accorded one charged with the offense of criminal contempt. Such a contention was made in the Gompers case, supra, and effectively disposed of by Mr. Justice Holmes, when he said: “It is urged in the first place that contempts cannot be crimes, because, although punishable by imprisonment, and therefore, if crimes, infamous, they are not within the protection of the Constitution and the Amendments giving a right to trial by jury, etc., to persons charged with such crimes. But the provisions of the Constitution are not mathematical formulas having their essence in their form; they are organic, living institutions transplanted from English soil. Their significance is vital, not formal; it is to be gathered not simply by taking the words and a dictionary, but by considering their origin and the line of their growth. * * It does not follow that contempts of the class under consideration are not crimes, or rather, in the language of the statute, offenses, because trial by jury as it has been gradually worked out and fought out has been thought not to extend to them as a matter of constitutional right. These con-tempts are infractions of the law, visited with punishment as such.”
In support of his motion to dismiss this appeal the Attorney General urges that since the State of Florida was not actually named as a party in the trial court, then it should not be held to be his duty to appear in the appellate court and defend the correctness of the judgment which forms the subject of this appeal. He points to the section of the statute prescribing his duties which requires that he appear and attend to in behalf of the State all suits or prosecutions, civil or criminal, or in equity in which the State may be a party or in anywise interested.[12] Although the State of Florida was not named as a party to the contempt proceeding which resulted in the judgment appealed, all of the authorities hereinabove mentioned uniformly hold that a criminal contempt is an offense against .the public or the State, and is a matter to be pursued only by the sovereign.
There is a fundamental and compelling reason why an appeal from a criminal contempt judgment should be prosecuted in accordance with the appellate rules relating to appeals in criminal cases. The only parties interested in or affected by a judgment of criminal contempt are the State of Florida on the one hand, and the convicted con-demnor on the other. If the judgment of criminal contempt arose as an incident to a civil proceeding the non-offending litigant to the action has no direct interest in the enforcement of the judgment, and bears no obligation to defend the correctness thereof in the event it is appealed. If an appeal is taken by the convicted condemnor, public policy requires that the correctness of the judgment be properly and adequately defended in the appellate court. Unless the propriety of the judgment is defended by the Attorney General, who under the statute is charged with the duty of appearing and attending to on behalf of the state all suits or prosecutions, civil or criminal, in which the state may be in anywise interested, the state’s interest in the enforcement of the judgment will be seriously jeopardized. It would be unthinkable to require the trial judge who entered ’the criminal contempt judgment to file a brief and appear and argue the case when it is heard in the appellate court. In like manner the trial judge should not be placed in the position of imposing upon other attorneys practicing at the bar of the court to render gratuitous services and make unreimbursable out-of- *38 pocket expenditures in connection with the defense of the judgment during its penden-cy in the appellate court. Be that as it may, whether it is the duty of the Attorney General to appear on behalf of the state and defend the correctness of criminal contempt judgments when they are appealed to an appellate court is not a question properly before us for consideration, and is a matter on which this court cannot with propriety pass upon at this time.
The majority opinion with which I am unable to agree holds as a matter of law that the contempt of which the appellants in this case were adjudged guilty is not a criminal contempt, but rather is a civil contempt. No useful purpose would be served by repeating that portion of the opinion rendered on the first appearance of this cause in this court which states the reasons and cites the supporting authorities upon which the conclusion is inescapable that the contempt in this case is criminal rather than civil in character.[13] Even the Attorney General properly agrees that the judgment involved in this case is for criminal contempt and not civil contempt. The holding of the majority is remarkable in that it fails to make reference to a single decision rendered by an appellate court either in Florida or the nation which supports the conclusion reached by it. On the contrary, it ignores and is in direct conflict with the settled principles relating to the law of contempt as typified by the decisions rendered by the Supreme Court of Florida in Demetree[14] and by the Supreme Court of the United States in Gompers.[15]
The majority concludes with the pronouncement that if a final judgment of contempt is entered as an incident and at the insistence of the parties to a civil action, and for violation of an order entered therein for the protection of rights asserted by such parties, the judgment shall be appeal-able in accordance with the rules of appellate procedure governing the civil action. Such a pronouncement demolishes the recognized distinction between civil and criminal contempt as defined by the decisions rendered by competent appellate courts down through the ages, and is likewise unsupported by any decision of an appellate court either in Florida or the nation. Proceeding from such false premise a new and novel rule of procedure is engrafted upon the law of this state which holds that since all such judgments of contempt arising as an incident to a civil action are civil in character, an appeal thereof shall be prosecuted in accordance with the rules of procedure relating to appeals in civil actions. Such procedure ignores and is contrary to the prior pronouncements of the Supreme Court of this state as set forth in Ex parte Crews, Giblin, Pennekamp and Lewis.[16]
For the reasons and upon the authorities hereinabove referred to I hold the opinion that appeals from judgments of conviction in criminal contempt proceedings should be in accordance with the procedure outlined and set forth in Part VI of Florida Appellate Rules relating to appeals in criminal cases. I agree that the motion of the Attorney General to dismiss the appeal should be denied, but not for the reasons stated in the majority opinion.

. Local Lodge Number 1248, etc. v. St. Regis Paper Co., Fla.App.1960, 125 So.2d 337.

. “Appeals in criminal eases * * * shall be prosecuted in accordance with Part VI of these rules * * * ” Rule 6.1, Florida Appellate Rules.

.Shaw v. Fletcher, 137 Fla. 519, 188 So. 135.

. Gompers v. Buck’s Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797.

. Dometree v. State, Fla.1956, 89 So.2d 498.

. Ex parte Crews, 127 Fla. 381, 173 So. 275.

. State ex rel. Giblin v. Sullivan, 157 Fla. 496, 26 So.2d 509.

. Pennekamp v. Circuit Court, etc., 155 Fla. 589, 21 So.2d 41.

. Lewis v. Lewis, Fla.1955, 78 So.2d 711.

. Gompers v. United States, 1914, 233 U.S. 604, 34 S.Ct. 693, 695, 58 L.Ed. 1115.

. Bessette v. W. B. Conkey Co., 1904, 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997.

. F.S. § 16.01, F.S.A.

. Local Lodge Number 1248, etc. v. St. Regis Paper Company, Fla.App.1960, 125 So.2d 337.

. Demetree v. State, Fla.1956, 89 So.2d 498, 501.

. Gompers v. Buck’s Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797.

. See citations in footnotes 6, 7, 8 and 9.