321 So.2d 87 (1975)
Richard L.K. FAIRCLOTH, Appellant,
v.
Barbara Hall FAIRCLOTH, Appellee.
No. W-506.
District Court of Appeal of Florida, First District.
October 29, 1975.
*88 John S. Winnie, Winnie & Winnie, Gainesville, for appellant.
Peter Enwall, Gainesville, for appellee.
McCORD, Judge.
This is an appeal from a judgment holding appellant in contempt of court and sentencing him to five months and 29 days but withholding commitment for 10 days to give appellant an opportunity to purge himself of contempt by paying $4,300 in arrearages incurred under the final judgment of dissolution of marriage between appellant and appellee. The contempt judgment further provides that appellant may purge himself of the contempt at any time by paying the aforesaid amount.
The final judgment ordered that appellant pay monthly child support of $200; one-half of the mortgage payments, taxes and assessments on the marital home, and provide for the maintenance thereof; that he pay lump sum alimony in the amount of $2,070.79 over an 18 month period together with attorney's fee of $1,500 to be paid in 12 monthly installments. The final judgment was appealed to this court and affirmed [Faircloth v. Faircloth, Fla.App. (1st), 289 So.2d 799 (1974)]. The evidence *89 at the contempt hearing held 22 and one-half months after the entry of the final judgment showed that none of the lump sum alimony had been paid nor had appellant made any contribution toward the mortgage, taxes, assessments and maintenance of the marital home. In addition, he was $930 in arrears in child support payments and had paid nothing on the attorney's fee. Further, the evidence showed that in November, 1973, appellant conveyed his undivided one-half interest in the marital home to a third party, thereby putting that asset beyond reach for satisfying any of his obligations under the final judgment. The record here is silent as to any attempt by appellant to secure modification of the final judgment. He appears to have taken it upon himself not to obey it.
Appellant contends that the contempt involved here was a criminal contempt proceeding rather than civil contempt and that his constitutional rights were violated in that (1) he was not informed of the right of an indigent to be provided counsel, and (2) the court made no determination of indigency for the purpose of appointment of counsel. This contention is without merit. In Demetree v. State, Fla. 89 So.2d 498, the Supreme Court explained the difference between civil and criminal contempt as follows:
"In its broadest aspects a civil contempt order is sought by a party to the cause and entered by the court for the private benefit of the offended party. While imprisonment may be adjudged in a civil contempt proceeding, it is coercive rather than punitive in nature. Customarily when imprisonment is ordered for a civil contempt its continuance is made contingent upon compliance with the order of the court and when the contemnor has so complied he is released from prison. The sentence is usually therefore indefinite and not for a fixed term. It is for this reason that in civil contempt it has been said that the contemnor `"carries the key of his prison in his own pocket."' In re Nevitt, 8 Cir., 117 F. 448, 451, 461, 54 C.C.A. 662. He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.
"In a civil contempt proceeding an offended party to the cause is primarily seeking relief, personal and private to himself, as distinguished from punishment for conduct offensive to the public or disrespectful to the court and its authority. On the other hand, a contempt proceeding criminal in nature is instituted solely and simply to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court. Customarily when imprisonment is ordered it is generally for a fixed term and is administered as punishment for an act committed rather than as coercion to compel the contemnor to do something which he had theretofore failed and refused to do."
See also State v. Anderson, Fla.App.(1st), 168 So.2d 554. In defining civil contempt, 17 C.J.S. Contempt § 6, states as follows:
"Civil contempt consists in failing to do something ordered to be done by a court in a civil action for the benefit of the opposing party therein, and is, therefore, an offense against the party in whose behalf the violated order is made. If, however, the contempt consists in doing a forbidden act, injurious to the opposite party, the contempt may be considered criminal."
It is obvious that a contempt commitment issued as the result of a party's failure to comply with the requirements of a final judgment of dissolution of marriage is a civil contempt rather than a criminal contempt (unless such failure consists in doing a forbidden act injurious to the opposite party in which event it may be a criminal contempt). The object of the contempt proceeding is primarily to secure compliance with the court's judgment or *90 order for the benefit of the opposing party rather than solely to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court. While there may be some elements of punishment involved in a civil contempt, the primary purpose is to secure compliance with the court's order for the benefit of the opposing party. On the other hand, as stated by the Supreme Court in Demetree, supra, "a contempt proceeding criminal in nature is instituted solely and simply to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court." (Emphasis supplied.) To summarize, the purpose of civil contempt may be a mixed purpose  to both secure compliance with the court's order for the benefit of the opposing party and to punish, but compliance is the primary purpose. Punishment may also be necessary in civil contempt in order to get the offender's attention and thereby obtain future compliance after release. The purpose of criminal contempt, on the other hand, is solely to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court.
Appellant has cited no authority and we know of none requiring appointment of counsel for an indigent charged with civil contempt. We do not infer from this ruling that an indigent contemnor is or is not entitled to appointment of counsel on a criminal contempt charge. That issue is not present here.
Appellant next contends that a contempt commitment for failure to obey a court order must reveal on its face an affirmative finding that the contemnor had the ability to obey the order or that his inability was brought upon himself due to his own fault. He states that the court made no evidentiary finding regarding his ability to pay, ignored his assertions that he had no money or assets, and ignored his offer to bring in financial records. Appellee contends that once she established the arrearage, it then became appellant's burden to prove that he was unable to pay through circumstances beyond his control (citing Naster v. Naster, Fla., 163 So.2d 264); that appellant's bare assertions that he was unable to pay were insufficient; that while appellant offered to produce financial records, he did not bring any to the hearing and produced no evidence to substantiate his claims. We agree.
In a somewhat similar case Orr v. Orr, 14 Fla. 112, 192 So. 466 (1939), the Supreme Court said:
"The appellee offered some testimony tending to show that he is at present unable to pay the award. This is not a necessarily proper defense to the application for the citation. Inability to pay is a valid defense at the time the decree was rendered, Phelan v. Phelan, 12 Fla. 449; Haddon v. Haddon, 36 Fla. 413, 18 So. 779; Arendall v. Arendall, 61 Fla. 496, 54 So. 957, Ann.Cas. 1913A, 662; but where no appeal has been taken from the order, it will stand inviolate, ...
* * * * * *
"The burden of proving inability is on the defendant, and as the final decree is an adjudication of his ability to pay, the only available defense for nonperformance is a showing that he is unable to comply with the terms of the decree due to factors beyond his control. 17 Am.Jur. 510; 19 C.J. 304, and cases therein cited.
"This rule was properly stated in the case of Hembree v. Hembree, 208 Ky. 658, 271 S.W. 1100, text 1101, `To have purged himself of contempt for his failure to comply with the court's orders he must have made it clearly appear, not only that he was unable to comply therewith, but also that his inability was not caused by his own neglect or misconduct.' This rule was reiterated in the later case of Roper v. Roper, 242 Ky. 658, 47 S.W.2d 517."
*91 In the case sub judice, although the record may not show that appellant has the present ability to immediately pay the full amount of the arrearage, the final judgment, which was appealed and affirmed, stands inviolate that he had the ability to comply with its requirements at the time it was entered. In addition, he has made no evidentiary showing of a subsequent inability to comply with it nor has he shown that any inability which he may have had was not caused by his own neglect or misconduct. To the contrary, the record shows otherwise  that he disposed of his 1/2 interest in the marital home. In this connection the Supreme Court in Naster v. Naster, supra, said:
"... In a contempt proceeding when the failure to pay has been established the husband has the burden of proving that his failure has not been willful. In exercising his judicial discretion in the contempt proceeding the chancellor may take into consideration the husband's inability to pay, together with other elements such as his failure to apply to the Court for relief when the inability arises, as well as the fact that the husband has intentionally brought about his financial incapacity. Yandell v. Yandell, 160 Fla. 164, 33 So.2d 869; Satterfield v. Satterfield, Fla., 39 So.2d 72."
We find that the evidence fully supports the contempt commitment entered by the trial judge and we now turn to State ex rel Trezevant v. McLeod, 126 Fla. 229, 170 So. 735 (1936), which appellant cites in support of his contention that the contempt commitment must reveal on its face an affirmative finding that the contemnor had the ability to obey the final judgment or that his inability was brought upon himself due to his own fault. There the Supreme Court said:
"Under the most respectable authority on contempt that we have been able to find, a `process' contempt commitment for refusing to obey an order of court must be based on an affirmative finding that it is within the power of the defendant to obey the order, and such finding must be made to appear on the face of the order of commitment, else it is void. Ex parte Cohen, 6 Cal. 318; Repalje on Contempt, par. 129. The order here involved is not an order of that nature."
The Supreme Court's above quoted ruling in Trezevant must be considered in the light of the facts of that case. We do not believe it was intended that such an affirmative finding must be made on the face of all orders of commitment of a contemnor for failure to abide by the process of the court. Such was necessary in Trezevant because there the term of imprisonment was for an indefinite time. There the circuit court had found the contemnor guilty of refusal to abide by an order of Circuit Court requiring him to pay alimony and ordered him to be committed to jail for his contempt "until he complies with the order of the court, or until the further order of the court." The Supreme Court stated the question was "whether or not the order can be enforced, in view of its indefiniteness as to the terms of imprisonment for which the condemned is to be committed." The Supreme Court pointed out that the contempt order appeared to be "predicated solely on a finding of past noncompliance with the court's order, and not on any present failure to comply therewith, although able so to do." The court then stated, "therefore the contempt being in its nature a punishment for what the defendant has heretofore done, is void because it specified no definite term of imprisonment." The Supreme Court in that opinion simply said in substance that where a contemnor is sentenced to imprisonment to there remain until he complies with the court's order (an indefinite term) the trial judge in his order of commitment must make an affirmative finding that it is within the power of the defendant to obey the order. We do not believe the Supreme Court intended to go beyond that ruling predicated upon the facts then before it. *92 We do not believe it intended to require such affirmative finding where a contemnor is sentenced to a definite term such as was done in the case sub judice. This is further substantiated by an examination of the case [ex parte Cohen, 6 Cal. 318 (1856)] cited by the Supreme Court in support of its ruling in Trezevant. In that early case, the Supreme Court of California said:
"By the affidavit of Cohen, which is not contradicted, it appears that the disbursements charged, were made by him in the course of his receivership, and that the money claimed by him as compensation had been used about his own business, and that he had not so much money in his hands, and was, therefore, unable to comply with the order of the Court.
"Under our statutes, the power of a Court to punish for a contempt is limited to a fine of five hundred dollars and imprisonment for five days, except when the contempt consists in the omission to perform an act which is yet in the power of a person to perform, in which case he may be imprisoned till he have performed it. §§ 488 and 489 Prac.Act.
"In this case, the Court does not find that it was in the power of Cohen to comply with the order; and his affidavit, which was not contradicted, shows that it was not."
Cohen, like Trezevant, dealt with a contempt in which the contemnor was sentenced to imprisonment for an indefinite term  until he complied with the court's order. As we have previously stated, the imprisonment in the case sub judice was for a definite term, and, in addition, the contemnor was given the option of paying the arrearages at any time and thereby secure his release. On the face of the order in the case sub judice, the trial court found appellant in "willful contempt." We consider that a finding that appellant either had the ability to comply with the final judgment or that any lack of ability was the result of his own neglect or misconduct was implicit in the trial court's finding that he was in willful contempt. Such is fully substantiated by the record. To remand this case for the sole purpose of requiring the trial court to vacate its previous order of commitment and enter a new order making such finding would be a waste of judicial time and effort. This would not be the case, however, if the trial judge had committed appellant to imprisonment until he paid the arrearage without making an affirmative finding that he had the ability to pay it. Such would then violate the Supreme Court's ruling in Trezevant.
We have considered Ratner v. Ratner, Fla.App.(3d), 297 So.2d 344, cited by appellant in support of his contention. There the court could have reversed on the ground that there was no evidence to support the contempt order, since no evidentiary hearing was held, but instead it predicated reversal upon the failure of the trial judge to make a specific finding that the contemnor had the financial ability to pay, citing State ex rel Trezevant v. McLeod, supra. Insofar as our opinion here conflicts with the ruling there, we disagree with the ruling in Ratner.
Affirmed.
RAWLS, Acting C.J., concurs.
SMITH, J., dissents.
SMITH, Judge (dissenting):
The mandate of State ex rel. Trezevant v. McLeod, 126 Fla. 229, 170 So. 735 (1936) seems to me to be clear enough: that an order of commitment for civil contempt, arising from a party's willful refusal to obey an order entered to coerce his action for the benefit of another, must be based on an affirmative finding that the party has power to obey, "else it is void." The District Court of Appeal, Third District, has honored that rule. Ratner v. Ratner, 297 So.2d 344 (Fla.App.3rd, 1974).
*93 Trezevant cannot be distinguished by the majority's analysis that the term of commitment there was for an indefinite term and the commitment here is for a definite term. Given the historic distinction between civil and criminal contempts [e.g., Ex parte Earman, 85 Fla. 297, 314-15, 95 So. 755, 760 (1923)] which the majority here properly invokes in rejecting appellant's claims to the right of free appointed counsel, the Supreme Court might have regarded the Trezevant commitment as a coercive civil order void for lack of a finding that the defendant had power to obey or as a putative criminal contempt order void for lack of a definite term of imprisonment. The Court chose the latter course. But to say that the order before us specifies a definite term of imprisonment and thus satisfies a standard which the order in Trezevant did not is to convert this case from one of civil coercion to one involving asserted criminal contempt, which plainly it is not. Demetree v. State ex rel. Marsh, 89 So.2d 498 (Fla. 1956); State ex rel. Byrd v. Anderson, 168 So.2d 554 (Fla.App.1st, 1964).
The order before us in fact specifies an indefinite term of commitment. While Faircloth was committed to a maximum term of five months and twenty-nine days, the order contains provisions permitting Faircloth to purge himself of his contempt and thereby terminate his imprisonment by paying the specified arrearages. That provision of the order is characteristic of coercive civil contempt citations, and it is essential. Newton v. Newton, 287 So.2d 410 (Fla.App.2nd, 1974); Williams v. Williams, 277 So.2d 542 (Fla.App.2nd, 1973).
A finding that he upon whom the order operates must have present power to obey is required by the historic nature of the contempt process. We do not imprison for debt. Art. I, § 11, Fla. Const. Therefore, a finding that the debtor ordered to pay is able to pay and willfully refuses to do so is the touchstone of the proceeding: the essential fact, found to be a fact, which validates the process. Without that finding, aberrant judicial power might soon punish for debt alone, and that without the benefit of specific criminal charges, the assistance of counsel, trial by jury or other benefits of due process in a criminal case. The absence of such a finding, therefore, should not be easily tolerated. That there was evidence in the record on which the chancellor might have predicated such a finding does not supply the finding itself. If we are to abstain from appellate trials in deference to the chancellor's superior ability to find the facts, we must insist, at least in these cases, that his findings be made explicit.
This is not to say that it was the chancellor's responsibility, or Ms. Faircloth's, to cast about for evidence that the defaulting Mr. Faircloth secretly has funds which he on oath declares he does not have. The burden is upon the party in default to prove not only that he is unable to comply with the court's present order to pay but also that his present inability is due not to his fault or neglect but rather to circumstances beyond his control which intervened since the final decree ordering him to pay. Yandell v. Yandell, 33 So.2d 869 (Fla. 1948); Orr v. Orr, 141 Fla. 112, 192 So. 466 (1939); Naster v. Naster, 151 So.2d 313 (Fla.App.2nd, 1963), cert. disch., 163 So.2d 264 (Fla. 1964). This burden of proof is cast upon him not by mere presumption of law, which vanishes upon the introduction of any evidence to the contrary [Locke v. Stuart, 113 So.2d 402 (Fla.App.1st, 1959); Leonetti v. Boone, 74 So.2d 551 (Fla. 1954)], but by the court's decree which created the obligation to pay. That decree, long since final and therefore invulnerable, is itself a finding that, as of the moment of its entry, Mr. Faircloth had the ability to make the required payments. Orr v. Orr, 141 Fla. 112, 192 So. 466 (1939). As against such a decree, he will not be heard to say that he could not comply when the decree was entered.
*94 Upon the affected party's failure to discharge his burden of proving that he is disabled to pay by reason of intervening factors not due to his own neglect or fault, the chancellor may find as a fact that he continues to be able to pay, as was originally decreed, or that any disability was self-induced. And on that finding the chancellor may order the defaulting party to pay or be imprisoned for his contemptuous refusal to do so.
In the absence of essential findings by the chancellor, I dissent from the decision to affirm the order of commitment.