490 So.2d 1313 (1986)
Vivian V. ANDERSON, et al., Appellants/Cross Appellees,
v.
CITY OF WILTON MANORS, a Municipal Corporation under the Laws of the State of Florida, Appellee/Cross Appellant.
No. 85-1537.
District Court of Appeal of Florida, Fourth District.
June 25, 1986.
Rehearing Denied July 31, 1986.
Ray Sandstrom of Sandstrom & Haddad, Fort Lauderdale, for appellants/cross appellee, Vivian V. Anderson.
Thomas J. Tighe of Lunny, Tucker, Karns & Brescher, Fort Lauderdale, for appellee/cross appellant.
PER CURIAM.
AFFIRMED.
GUNTHER, J., concurs.
GLICKSTEIN, J., concurs specially with opinion.
DOWNEY, J., concurs in part and dissents in part with opinion.
GLICKSTEIN, Judge, concurring specially.
I write upon the second issue only; namely, the trial court's denial of the City of Wilton Manors' motion for attorney's fees in the contempt proceeding. The denial was apparently based on two grounds: (1) that the city ordinance providing for such fees to be awarded the city when acting to abate a nuisance was illegally retroactive, or an ex post facto law; (2) that the ordinance did not pertain to a contempt proceeding.
Without discussing the former ground, I believe the latter to justify denial, notwithstanding the fact that black letter law is lacking. The city claims that the contempt proceedings were undertaken in an effort to abate the nuisance because appellant had not complied with the prior court order; therefore the ordinance provision authorizing reasonable attorney's fees should apply. Mrs. Anderson argues that criminal contempt actions have as their sole purpose vindication of the court's authority, and therefore cannot be maintained for the purpose of abating a nuisance. I agree with Mrs. Anderson.
The following excerpt from Faircloth v. Faircloth, 321 So.2d 87 (Fla. 1st DCA *1314 1975), and incorporating a long quotation from Demetree v. State, 89 So.2d 498 (Fla. 1956), states the pertinent law:
"In Demetree v. State, Fla. 89 So.2d 498, the Supreme Court explained the difference between civil and criminal contempt as follows:
"In its broadest aspects a civil contempt order is sought by a party to the cause and entered by the court for the private benefit of the offended party. While imprisonment may be adjudged in a civil contempt proceeding, it is coercive rather than punitive in nature. Customarily when imprisonment is ordered for a civil contempt its continuance is made contingent upon compliance with the order of the court and when the contemnor has so complied he is released from prison. The sentence is usually therefore indefinite and not for a fixed term. It is for this reason that in civil contempt it has been said that the contemnor `"carries the key of his prison in his own pocket."' In re Nevitt, 8 Cir., 117 F. 448, 451, 461, 54 C.C.A. 662. He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.
"In a civil contempt proceeding an offended party to the cause is primarily seeking relief, personal and private to himself, as distinguished from punishment for conduct offensive to the public or disrespectful to the court and its authority. On the other hand, a contempt proceeding criminal in nature is instituted solely and simply to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court. Customarily when imprisonment is ordered it is generally for a fixed term and is administered as punishment for an act committed rather than as coercion to compel the contemnor to do something which he had theretofore failed and refused to do."
See also State v. Anderson, Fla. App.(1st), 168 So.2d 554. In defining civil contempt, 17 C.J.S. Contempt § 6, states as follows:
"Civil contempt consists in failing to do something ordered to be done by a court in a civil action for the benefit of the opposing party therein, and is, therefore, an offense against the party in whose behalf the violated order is made. If, however, the contempt consists in doing a forbidden act, injurious to the opposite party, the contempt may be considered criminal."
It is obvious that a contempt commitment issued as the result of a party's failure to comply with the requirements of a final judgment of dissolution of marriage is a civil contempt rather than a criminal contempt (unless such failure consists in doing a forbidden act injurious to the opposite party in which event it may be a criminal contempt). The object of the contempt proceeding is primarily to secure compliance with the court's judgment or order for the benefit of the opposing party rather than solely to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court. While there may be some elements of punishment involved in a civil contempt, the primary purpose is to secure compliance with the court's order for the benefit of the opposing party. On the other hand, as stated by the Supreme Court in Demetree, supra, "a contempt proceeding criminal in nature is instituted solely and simply to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court." (Emphasis supplied.) To summarize, the purpose of civil contempt may be a mixed purpose  to both secure compliance with the court's order for the benefit of the opposing party and to punish, but compliance is the primary purpose. Punishment may also be necessary in civil contempt in order to get the offender's attention and thereby obtain future compliance after release. The purpose of criminal contempt, on the other hand, is solely to vindicate the authority of the court or *1315 otherwise punish for conduct offensive to the public in violation of an order of the court.
321 So.2d at 89-90 (emphasis in original).
The trial court correctly characterized the contempt order here as one of criminal contempt. It did not hold out a carrot and a stick, as civil contempt orders generally do; rather it provided punishment, period. Since Mrs. Anderson is to suffer the penalty whether or not she abates the nuisance, we do not see how the contempt proceeding was aimed at bringing about abatement of the nuisance. Moreover, it was not merely the court's idea that Mrs. Anderson be given a criminal penalty; the city's amended motion for contempt prays the court to hold her in contempt and to incarcerate her for such time as is necessary to vindicate the authority of the court.
I regret that my learned colleague who dissents from the affirmance of the trial court's denial of attorney's fees to the city does not say how the above reasoning is unsound. He cannot be suggesting that Faircloth and Demetree are unsound.
DOWNEY, Judge, concurring in part and dissenting in part.
I concur in the affirmance of the main appeal. However, I dissent from the affirmance of the cross appeal, which involves a denial of attorney's fees to the appellee city pursuant to a city ordinance.
This litigation between the city and Anderson has been ongoing for some years. During the litigation the city passed an ordinance providing for the allowance of attorney's fees and costs to the city for its efforts to abate a nuisance. The city sought an allowance of fees for its services that were rendered after the passage of the ordinance (although the ordinance purported to make its scope retroactive).
The trial court denied the allowance of such fees to the city and it is argued here that the court was correct because the fees were incurred in efforts to have Anderson held in contempt for violating the court's orders enjoining her continued operation of a nuisance. In my judgment, this argument is unsound; the fees were incurred for services, I believe, contemplated by the ordinance and should have been allowed.