585 So.2d 1158 (1991)
Karen S. FABIAN, Appellant,
v.
STATE of Florida, Appellee.
Nos. 90-2349, 90-2350.
District Court of Appeal of Florida, Fourth District.
September 18, 1991.
Richard L. Jorandby, Public Defender, and Jill Hanekamp, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Sylvia H. Alonso, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Affirmed.
DOWNEY and GUNTHER, JJ., concur.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
The power to punish direct criminal contempt is one of the most unusual of judicial powers: the judge who was the object or butt of the allegedly contemptuous conduct becomes the prosecutor and then sits in judgment over the very defendant who is said to have just assailed the judicial dignity. That precise circumstance is condoned nowhere else in the law. For that reason, the power must be cautiously and sparingly used. Seaboard Air Line Ry. Co. v. Tampa Southern R. Co., 101 Fla. 468, 134 So. 529 (1931); Demetree v. State, 89 So.2d 498 (Fla. 1956).
In this case, events began ordinarily enough. The court had just questioned appellant at a first appearance as to aliases and explained the charges against her (burglary of a dwelling). The court then inquired if appellant could afford an attorney, and the following took place:
THE DEFENDANT: No.
THE COURT: You've got the public defender.

*1159 THE DEFENDANT: Thank you very much.
THE COURT: Off the record.
* * * * * *
THE COURT: Ms. Fabian, your attitude is one of disrespect. Your facial gestures, the tone of your voice, your mannerisms, your smirking is contemptuous. I'm going to give you an opportunity before I hold you in contempt of court to take that smirk off your face and to apologize.
THE DEFENDANT: Excuse me, sir?
THE COURT: I'm ordering you at this time to show cause why you shouldn't be held in direct criminal contempt of court. I'll give the Public Defender a moment to discuss the matter with you.
* * * * * *
THE DEFENDANT: I'm sorry, Your Honor. I'm sorry, Your Honor.
THE COURT: Say it like you mean it, ma'am.
THE DEFENDANT: (Makes a sound.)
THE COURT: No, not good enough.
THE DEFENDANT: Thank you.
THE COURT: I hold you in direct criminal contempt of court, sentence you to six months Broward County Jail. You have 30 days in which to take an appeal from the sentence. If you can't afford an attorney, I'll be happy to appoint one for you.
THE DEFENDANT: Son of a bitch.
THE COURT: I'm sorry. What did you say ma'am?
THE DEFENDANT: Thank you.
THE COURT: No ma'am. I asked you what did you say?
THE DEFENDANT: (No response.)
THE COURT: Ma'am, let the record reflect that the defendant has just indicated contempt for the Court by uttering the words "son of a bitch." I'm going to give you occasion to show cause why you should not be held in direct criminal contempt of court. Counselor, I expect that you'll talk to her. Now I'm ordering you ma'am, to show cause why you shouldn't be held in direct criminal contempt of court.
THE DEFENDANT: Sir, I have no reason to be. At all.
THE COURT: This court finds continuing disrespect and contempt of court. Finds the Defendant guilty of direct criminal contempt of court. Sentences the Defendant to six months incarceration in the Broward County Jail consecutive to the contempt sentence previously imposed. I'd suggest detention officers get her out of here before she becomes a permanent resident in the Broward County Jail. [e.s.]
Let me say straightaway that I respect the trial judges who preside over crowded criminal dockets in Florida. They must deal with an infinite variety of people in the most distressing circumstances but without the time for reflection, research and contemplation which appellate judges enjoy. That they are able to treat the angry and unruly repeat offenders whom they regularly confront with any calmness at all is a measure of their judicial credit.
The demanding setting in which they operate, however, is only an additional reason why they must use their considerable contempt authority with profound personal restraint. Where the personal feelings or rancor of a judge are most likely to surface, there indeed the greatest circumspection must be placed on the judge's use of the powers of office. If the judicial spleen is likely to influence judicial action, that is just the best reason to restrain the flexing of the judicial muscles.
With all due respect to Judge Grossman  an able, experienced and respected criminal court judge  and to my colleagues, I am unable to join in affirming these contempt convictions. I cannot help feeling, for I have absolutely no other basis to say it, that Judge Grossman had just seen one smirk too many, heard one too many snide remarks, and had endured one too many abusive attitudes on this day. I wonder if he punished conduct that he might have waved off with a laugh on another.
I have strong doubts whether smirking and facial gestures, tone of voice and attitude, *1160 alone or together, can ever be a sufficient basis for direct criminal contempt of court. The central problem is one of definition. I should find it quite difficult to define the distinction between the permissible smirk and the contumacious one. Nor could I easily describe the precise facial gesture or tone of voice or attitude so destructive of the dignity and functioning of the court as to call upon the judicial cannon of contempt.[1] And, of course, criminal contempt is especially unlikely where, as here, the defendant actually apologizes when asked to do so.[2]
While I thus do not see the non-verbal conduct as constituting direct criminal contempt of court, I also recognize that the words "son of a bitch" may not be calculated to suggest deep reverence for someone so described. At the same time, however, even the most vigilant policeman of courtroom decorum would concede that these words could be uttered, even in the circumstances above, with an intent other than to describe the judicial lineage.
Like another word one often hears in and out of courtrooms, they can be used adverbially to express surprise or enormity, as in "that's a long time." In this case, the words "you're a" are conspicuously missing before the offending words  a circumstance to some which might reasonably suggest another meaning or usage.
Finally the punishment troubles me. Any period of incarceration for such a comparatively mild expletive strains the limits of proportionality. Confinement for an entire year for mere facial gestures and tone of voice and such a common profanity is  well, simply beyond the limits. I should admit that I have difficulty saying precisely where the line should be drawn, but I do know that one year is over it. In any case, where the line might be drawn is for me not the issue. No period of incarceration should be imposed for the kind of conduct here.
Moreover, the last sentence spoken by Judge Grossman suggests to me that the punishments were imposed in some anger. I do not think that due regard for the factual findings of trial judges and appellate deference to their discretionary decisions require that we affirm exceedingly harsh punishments imposed by an angry judge largely for being made angry.
I therefore dissent.
NOTES
[1] The real danger in finding contempt in mere manner or attitude is that these are such subjective things, whose meaning and purpose may be murky and unknown even to the one whose manner is at issue. They allow contempt to be used to punish impiety when merely being impious is not a crime, and courts can usually carry on in the face of it. Judges cannot enforce reverence for their function and position, any more than a jilted suitor can enforce love and romance. Respect for law and judges is far more likely to arise from the even-handed and temperate use of judicial powers.
[2] To betray a personal view, the remedy for such indignities  as indeed for most social intercourse  is probably a sense of humor. As John F. Kennedy once observed: "There are three things which are real; God, Human Folly and Laughter. The first two are beyond our comprehension. So we must do what we can with the third." I hope that I am not alone in finding humor, even in the courtroom, as an antidote to hostility.