350 So.2d 471 (1977)
James Ron SHELLEY, Public Defender, First Judicial Circuit of Florida, Petitioner,
v.
The DISTRICT COURT OF APPEAL, First District of Florida, Respondent.
No. 46537.
Supreme Court of Florida.
September 30, 1977.
Bruce S. Rogow, and Daniel S. Pearson of Pearson & Josefsberg, Miami, for petitioner.
Robert L. Shevin, Atty. Gen., and Michael M. Corin, Asst. Atty. Gen., Tallahassee, for respondent.
*472 Bennett H. Brummer, Public Defender, Miami, for Florida Public Defenders' Association, as amicus curiae.
OVERTON, Chief Justice.
James Ron Shelley, Public Defender for the First Judicial Circuit of Florida, petitions for writ of common law certiorari to review an order of the First District Court of Appeal, finding him in contempt for failure to prosecute an appeal and failure to respond to an inquiry of the court. This action initially began in the District Court of Appeal, and there has been no previous appellate review.
The assertion is also made that there is conflict with In re McCarey, 105 So.2d 813 (Fla. 1st DCA 1958). McCarey held that a lawyer's abandonment of an appeal of his client was "not truly a contempt of the appellate court," but that the facts in that case justified a disciplinary prosecution for disbarment. 105 So.2d at 815. We find decisional conflict, even though the McCarey case did not involve a failure to respond to a letter inquiry and directive of a court. We have jurisdiction.[1]
The instant case began on February 6, 1974, when a notice of appeal from a conviction of breaking and entering was filed by George Ralph Miller, an assistant public defender and member of the staff of the petitioner, on behalf of Clyde Young, a client of petitioner. Nothing further was done to prosecute the appeal. The defendant Young was placed on probation in June of 1974. On September 20, 1974, the clerk of the First District Court of Appeal, at the direction of the chief judge, wrote petitioner Shelley directing him to advise the court within seven days why the appeal had not been prosecuted. No response was made by petitioner. On October 17, 1974, the First District Court of Appeal ordered the petitioner Shelley to appear before the court and show cause why he should not be held in contempt for failure to prosecute and failure to respond to a directive of the court. Since Shelley had neither responded nor appeared at that point, it was necessary for the court to have the sheriff serve the Order to Show Cause on the petitioner. The order directed petitioner to show "why [he] should not be held in contempt of this Court for [his] dereliction for failure to prosecute this appeal in accordance with Florida Appellate Rules."
Petitioner at the hearing on November 5, 1974, did not deny he received the court's letter, but urged that it was his assistant who failed to respond to the circumstances of the appeal. He nevertheless admitted: "I am personally responsible for whatever he did because he cannot act except by my authority." The District Court found that he failed to prosecute the appeal of his client and failed to respond properly to the court's directive, and fined him one hundred fifty dollars ($150.00) and costs. Although no express mention was made of "contempt" in the order, contempt appears to be the foundation for the sanctions imposed since the last sentence of the order read: "Payment of said fine and court costs within 30 days from the date of this Order shall constitute purge of this Order."
We hold that the imposition of a summary contempt sanction is a proper and necessary disciplinary tool to aid a judicial tribunal in carrying out its necessary court functions,[2] but the imposition of the sanction in this case was not warranted under the facts presented in the record. The contempt power is a proper and historical alternative to existing formal disciplinary proceedings. The Integration Rule of The Florida Bar, Article XI, Rule 11.14, providing for disciplinary proceedings in circuit courts, is no bar to the use of this summary power in cases of lesser infractions of the *473 various rules governing the practice of law which affect the necessary operations of a court. Such authority historically is within the inherent power of courts, and the District Courts of Appeal clearly have the inherent authority to impose such sanctions. Flaksa v. Little River Marine Construction Co., Inc., 389 F.2d 885, 888-89 (5th Cir.1968), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). See In re Sutter, 543 F.2d 1030, 1037-38 (2d Cir.1976); Bardin v. Mondon, 298 F.2d 235 (2d Cir.1961). Contra, see Gamble v. Pope & Talbot, Inc., 307 F.2d 729 (3rd Cir.1962), cert. denied, 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962).
We find the sanction imposed by the District Court improper because there was a lack of personal knowledge by the petitioner of the grounds for contempt. This is a substantial mitigating circumstance in this case. Further there is no finding that the petitioner personally disobeyed a court order.
Accordingly, the order of the District Court of Appeal is quashed.
ADKINS, BOYD, SUNDBERG, HATCHETT and KARL, JJ., concur.
ENGLAND, J., concurs with an opinion.
ENGLAND, Justice, concurring.
The district court of appeal has identified two distinctive concerns which prompted its action against Shelley  a concern that he failed to prosecute an appeal diligently, and a concern for the administrative need of the judiciary to control its justice-dispensing processes. Insofar as the court's order is predicated on the first, which has as its goal the protection of clients' rights to obtain prompt appellate review of a trial ruling with which they are aggrieved, it is wholly without support in the record.
The record shows that public defender Shelley's office zealously and successfully advocated the case of Johnny Clyde Young. Almost immediately after Young's conviction and sentence, and at approximately the same time the notice of appeal was filed in the district court, assistant public defender George Miller took appropriate action before the trial judge to vacate Young's sentence and to have him released on probation. (This was accomplished two months before the first notice to Shelley was sent by the district court's clerk.) Young's interest in the appeal vanished when he was released from custody, as was shown by an affidavit to that effect in the record. Thus, when the district court held Shelley in contempt, it well knew that it was in no way vindicating a client's rights and that, at best, it was acting in response to the negligent failure of Miller (or others in the public defender's office) to notify the district court clerk that the appeal should have been dismissed.[1]
The only legitimate concern of the district court in this case, then, was Shelley's alleged affront to that court's record-keeping function  knowing what cases are in what stage of the appellate process for scheduling the court's work flow and for statistical purposes. This function, of course, is without question a proper duty of the chief judge as administrator of the court (Article V, Section 2(c), Florida Constitution) and of the court's clerk. I agree with my colleagues, however, that contempt was not an appropriate response to that affront on the facts of this case.
First, as the majority notes, Shelley had no personal knowledge of the Johnny Clyde Young case. George Miller, an assistant public defender employed by his office, had sole charge of the case and had personally filed the controversial notice of appeal. Shelley lived and had his principal office in *474 Pensacola (Escambia County), while Miller operated a branch of the public defender's office in De Funiak Springs (Walton County). The two offices are about 90 miles apart. The Public Defender's Association, acting as amicus curiae in this case, notes that the caseloads of some public defender offices in Florida are so large that it is impossible for the elected public defender to be acquainted personally with every matter under his jurisdiction. The record before us shows that the public defender's office in the First Judicial Circuit, Shelley's domain, handled several thousand cases in 1974. Shelley and the Association suggest that it would no more be possible for an elected public defender to be familiar with each case personally than it would be for the Attorney General, or for the senior partner of a law firm, to be personally familiar with each case within his organization. I agree.
Second, the record shows that when Shelley received the first form inquiry about the Young case he took immediate action within his organization to ascertain its status. (A timely response to the district court's request was virtually impossible since the clerk's directive required an answer within seven days. It was not received in Pensacola until four days after it was mailed, and the case records were only available in De Funiak Springs. This does not excuse Shelley's failure to indicate that he had received the communication and was working on it, however.) Shelley was assured by personnel in his office that the matter had been resolved by filing a dismissal of the appeal, or some other appropriate document, in the district court.[2]
Third, Shelley did not disobey the district court's Rule to Show Cause. That directive did not ask Shelley to explain why he failed to respond to an earlier request of the court. Its sole command was for Shelley to
"show cause, if any you have, why you should not be held in contempt of this Court for your dereliction for failure to prosecute this appeal in accordance with Florida Appellate Rules."
He made that showing at the time and place he was ordered to appear by the district court. It follows, then, that the district court found Shelley contemptuous in a matter for which he had never been charged  failing to answer the district court clerk's routine file-check letter.
In Barry v. State, 324 So.2d 95 (Fla. 1st DCA 1975), a different panel of the same district court, on materially identical facts, declined to hold an attorney in contempt of court but reprimanded him publicly. The action taken in that case was a reasonable judicial response to an attorney's disregard for court directives, and a like response may well have been appropriate in this case. My colleagues are eminently correct, however, in concluding that a contempt finding and fine were improper in response to the defaults in the public defender's office.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.
[2] For a critical discussion of this subject, see Wolf, Attorney's Negligent Failure to Comply with Procedural Deadlines and Court Calendar Orders  Sanctions, 47 Texas L.Rev. 1198 (1969): Note, Dismissal for Failure to Attend a Pretrial Conference and Use of Sanctions at Preparatory Stages of Litigation, 72 Yale L.J. 819, 829-32 (1963); Note, Civil Procedure  Power of Federal Courts to Discipline Attorneys for Delay in Pretrial Procedure, 38 Notre Dame Lawyer 158, 161-66 (1963).
[1] Had Shelley in fact failed to prosecute Young's appeal, a finding of contempt would not necessarily be the only appropriate response. In In re McCarey, 105 So.2d 813, 815 (Fla. 1st DCA 1958), cert. denied, 112 So.2d 10 (Fla. 1959), the court held:

"While members of the bar and the bench are engaged together in the administration of justice, a lawyer's failure properly to prosecute an appeal and properly to represent his client is not truly a contempt of the appellate court, although it may well be a breach of his professional duty to his client."
[2] Interoffice communications and notations supportive of Shelley's testimony on this point were tendered to, but not received by the district court.