LETTS, Judge.
On appeal is an order of direct criminal contempt entered against the Broward County State Attorney’s office for “deliberately and repeatedly” announcing it was ready for trial when it knew full well it was not. We reverse.
The underlying criminal case against twelve defendants involved many defense lawyers and essentially three state attorneys. After the controversy had already dragged on for well over a year, at a February 23, 1990 hearing, it was made known that the state had not furnished a requested statement of particulars, or filed an amended information in which it claimed it would add more charges. The judge made the following remarks at that hearing:
I will say this, I will not appreciate the playing of games in this case. This case is going to trial. I don’t want to have to set it every two months and then find out that it obviously needs to be continued.
It’s going to take time on discovery and motions and time on preparations. And you are all grown-ups and excellent attorneys on the case — each and everyone of you. I don’t have to sit on you like every time I have to sit on my other lawyers in some of my other cases.
So I’m willing, depending on the status on how far we get, to move it to a time a few months down the road where it looks more likely that it may go to trial.
At the conclusion of this hearing, a status conference was set for February 28th.
At the status conference, five days later, another assistant state attorney, substituting for the original one who was on vacation, announced: “I am ready to try the case today.” The trial court, obviously surprised, responded:
THE COURT: Let me ask the state because they announced ready. Two days ago the state was getting ready to file an amended information. Two days ago I told the state to come up with a bill of particulars for these attorneys.
Now, if you are not filing an amended information and have provided them with the bill of particulars then I will listen to *969 you announce ready. If not then someone sent you up here with the wrong information.
Nevertheless, the state insisted, several more times, that it was ready, so the judge orally set the matter on her trial docket for March 12th, for five out of the twelve defendants who had also announced ready.
At the next hearing on March 9th, the original assistant state attorney, who was absent from the status conference, had returned from vacation and immediately made it perfectly clear that he had no intention of trying any of the defendants on March 12th and repeated his intention to amend the information and later provide a statement of particulars. Upon this announcement, several of the defendants immediately demanded speedy trial and the judge, understandably, vented her frustration at the state’s maneuvering:
THE COURT: At the status conference of this case when the court had before it the defendants and the State of Florida, and in an attempt to determine the status of the case, whether the parties were ready for trial, what matters were left to be done that needed to be heard prior to a trial proceeding taking place, this court questioned that of the State of Florida as to announcement of whether it was ready or not ready for trial, the State of Florida announced to this court that it was ready.
The court after that then determined from which defendants if any were ready to proceed to trial, had heard from some that they were indeed ready for trial, and went to make arrangements that were necessary to one, have matters that were left to be heard on any outstanding matters heard prior to the time of trial, rearrange scheduling so that this case could be tried as requested, and continued the matters for any hearings for to date under the circumstances that the State was ready.
I believe the record will reflect that when the state had announced ready the court was perhaps a bit surprised because there had been so many comments at the hearing prior to that that there were amendments to informations to be filed and that the case was not ready.
This court is willing to accept the difficulties placed upon it by the nature of the job. It does not believe it appropriate to take upon it any additional difficulties established because of statements made to the court by parties that they know or should have known are blatantly false.
At this time I’m ordering the State of Florida and [the assistant state attorney at the status conference], who I know is not before the court at this time, to show cause on Monday why it should not be held in contempt of court for announcing to this court that it was ready for trial and has since notified the court on this date that it has not even subpoenaed any witnesses for this trial proceeding.
I want it made clear whatever my determination is as to that that I am extremely dismayed, whether an excuse is given so that it does not rise to the level of contempt, that the State Attorney’s Office would take the actions that it’s taken in this case before me.
The allegations and the issues in this case strike to the very heart of what this system is all about. And I am at a loss for words at this time to understand how the State could so frivolously take its responsibilities in these actions.
I wish to have that answer provided to me at 9:00 o’clock Monday morning in courtroom 416.
The following Monday, March 12th, at the commencement of the contempt proceedings, a third assistant state attorney moved for a continuance of the criminal trial until April 9th.[1] The assistant state attorney who had been the spokesman at the first hearing on February 23rd, and the substitute who handled the status conference by himself on February 28th were also present. All three confirmed that the *970 judge’s recapitulation of prior events was correct. Thereafter, the three attorneys took turns apologizing and saying it was never their intention to mislead the court and that “somehow a general tactical discussion got turned into something etched in stone.” The assistant state attorney who had been the sole representative at the status conference shouldered most of the blame, confessing that he wrongly “assumed” the state was ready when he so declared at the hearing on the 28th of February.
The judge did not accept the excuses given and entered an order of contempt, finding that the state attorney’s office had “deliberately and repeatedly ... stated that it was ready ... when in fact ... such readiness amounted to nothing more than strategic games that ultimately mislead the court_ Such actions transgress the dig-
nity of the court and the prestige of its orders and greatly interferes with the orderly administration of justice.” It is from this order that the state has appealed.
We have read every single word of this record and we conclude that the trial judge might have been justified in finding the three individual attorneys in direct criminal contempt. However, we are of the opinion that this particular order, which encompassed the entire state attorney’s office, was too broad in scope under the facts and circumstances of this case.
We begin our legal analysis with comment on direct criminal contempt vis-a-vis the indirect version. These two variations are embodied in Fla.R.Crim.P. Rules 3.830 and 3.840. If a trial judge concludes that a contempt of court has occurred, the punishment of the contemnor can be the same under either rule. However, there are essential differences between the two.
One such difference was discussed in Pugliese v. Pugliese, 347 So.2d 422, 425 (Fla.1977): “where the act constituting the contempt is committed in the immediate presence of the court, this contempt is defined as direct. Where an act is committed out of the presence of the court, the proceeding to punish is for indirect (sometimes called constructive) contempt.” The other essential difference is that indirect criminal contempt under rule 3.840 sets forth seven criteria not required under rule 3.830, the latter addressed solely to direct criminal contempt.
Adapting these differences to the matter sub judice, the trial judge, as we have already noted, found the entire state attorney’s office guilty of direct criminal contempt. However, the only evidence in the record to support a finding of direct criminal contempt is against the three assistant state attorneys who appeared in court and made, or sat there mute as one or more of their number made, the misrepresentations to the judge. The trial judge’s brief cites United States v. Baldwin, 770 F.2d 1550 (11th Cir.1985), cert, denied, 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986), in support of her position that the contempt was direct. However, we distinguish that case. In Baldwin, the trial judge, twice, directly ordered the particular lawyer to appear in court at a certain place and time, which he not only deliberately failed to do, but boldly announced, in court, his intentions not to do so. Sub judice, the assistant state attorneys never failed to appear and any contemptuous acts or statements, attributable to the entire state attorney’s office, were never directly stated before the court. Furthermore, the contemptuous announcement of readiness in the case at bar took place prior to the issuance of any order which, when subsequently orally issued, merely set the cause for trial.
It is our belief that a finding of direct criminal contempt would have to be limited to these same three representatives of the state appearing in court. Any other contempt by the entire state attorney’s office, excluding these three, would be committed outside the presence of the court making it necessary to resort to indirect criminal contempt under rule 3.840, particularly 3.840(a)(1),[2] which requires a written *971 order to show cause. Sub judice, the order to show cause was not in writing. However, the state raised no objection to this deficiency and, more importantly, all of the other requirements of the order to show cause for indirect criminal contempt under rule 3.840(a)(1) were met by the trial judge below. The oral order informed the state of the essential facts constituting the charge and required the state to appear in court at a specified time and place three days later. We therefore conclude that all the safeguards afforded the contemnor under the indirect rule were met and that the lack of a written show cause order was not fatal. At a minimum, the judge was right for the wrong reason. See Applegate v. Barnett National Bank of Tallahassee, 377 So.2d 1150 (Fla.1979).
Nonetheless, even if we interpret the judge’s order as one of indirect criminal contempt, we believe the order was too broad in scope under the facts of this case when applied to the entire work force in the state attorney’s office. In Shelley v. District Court of Appeal, 350 So.2d 471 (Fla.1977) our supreme court held that in order for a contempt sanction to be upheld, the contemnor must have personal knowledge of the grounds for contempt. There is no record support for the proposition that the entire state attorney’s office had personal knowledge of the tactical games that were played by improperly announcing ready. As stated earlier, we might not have reversed a contempt finding against the three assistant state attorneys actively involved in this matter. However, the judge chose not to name them individually; to the contrary, she specifically exonerated the only one who had made the incorrect announcement of readiness. Nor can the head of the office, the state attorney himself, be held accountable on a captain-of-the-ship theory. There is nothing in the record to suggest that he had personal knowledge of the acts of contempt. Accordingly, under the Shelley case, contempt will not lie against the state attorney himself or his office. In so holding, we do not address the question of whether an entire office, or the head thereof, could ever be in contempt. If the contemptuous conduct could be classified as an example of a general policy or practice, we might be otherwise disposed. Obviously, if such conduct were routine policy or practice, everyone in the office would have personal knowledge of it, either express or implied. However, there is nothing in this record to establish that what transpired here was routine office policy, other than the trial judge’s observations that the conduct was “something that quite frequently happens in your office” and her further allusion to “both sides ... waiting for someone to announce ready” at status conferences. These unsworn observations by the judge do not establish guilt beyond a reasonable doubt in the matter before us now. Rowe v. Wille, 415 So.2d 79, 81 (Fla. 4th DCA 1982). Moreover, the judge’s latter quoted observation implicates the defense just as much as the state.
In view of our conclusion, the award of reasonable attorney’^ fees and costs to the defense must also be reversed. Parenthetically, we question the efficacy of an award of attorney’s fees and costs. See Lamb v. Fowler, 574 So.2d 262 (Fla. 1st DCA 1991).
REVERSED AND REMANDED.
ANSTEAD and POLEN, JJ., concur.

. This particular assistant attended all of the hearings alluded to herein except the February 28th status conference.

. It is interesting to note the inclusion of subsection “(a)" where there is no subsequent subsection (b) or, for that matter, any other letter of the alphabet.