GRIFFIN, Judge,
concurring specially.
I agree with the result agreed upon by my colleagues, and I agree in part with reasons expressed by each in their opinions. The principal reason I conclude the appealed order requires reversal is different from both, however.
On October 27, 1995, HRS filed a dependency petition in the interests of C.D. and T.D. The children’s mother consented to the dependency petition, and defaults were ultimately entered against each child’s father. The disposition hearing was originally scheduled to be held on January 11, 1996, but the court granted HRS’ motion for a continuance and rescheduled the hearing for January 25, 1996. Three days before the scheduled hearing, HRS filed with the court the predisposition study it was required to prepare under section 39.408(3), Florida Statutes (1995). In the report, HRS explained that it had investigated placing the children with T.D.’s paternal aunt and her family. According to HRS, the mother preferred that the children be cared for by her sister, Gina Freeman, and the report mentioned that, since the Free-mans lived in Alabama, a home study would be requested through interstate compact. It was recommended in the report that the children be placed in the temporary care of T.D.’s paternal aunt.
On January 25, 1996, the date scheduled for the disposition hearing, the lower court judge announced that for years he had required HRS to submit reports seven days in advance of the hearing, which, in his opinion, was necessary in order for him to be able to read the reports prior to the scheduled hearing. Of the fourteen hearings scheduled that day, the judge said, reports had been received seven days before the hearing in only three cases. He thereupon ordered that the disposition hearings in the cases, including this one, in which the reports had not been filed on time, would be continued to a later date. The judge also announced his intention to tax HRS with the costs incurred by those attending[1] the aborted hearings. The Freemans apparently were present, having travelled from Alabama.
In the written order of continuance, the judge explained that the continuing failure of HRS to comply with the court’s seven day requirement “will unquestionably result in the delivery of poorly reasoned judicial conclusions, a result which is unacceptable.” The order provided that the hearing would be rescheduled to February 22, 1996, and that the court would then entertain any motion for the recovery of expenses and costs, including reasonable attorney’s fees, incurred by any party other than the State of Florida as a result of the rescheduling of the hearing.
On February 5, HRS filed a motion for an order of compliance with the Interstate Compact on the Placement of Children and, in the motion, noted its placement recommendation for the children would be Gina Freeman.
At the February 22 hearing, the lower court ordered the children placed with the' Freemans. At the conclusion of the proceeding, Jim Freeman reminded the court that in its previous order the court authorized recovery of their costs due to the continuance. The court inquired about the amount of Freemans’ costs to attend the hearing, specifically the mileage and their lost wages, and, on the spot, awarded them $461.88 to be paid by HRS. The court then entered a written “Cost Judgment” on the “Motion to Tax Costs by the Court.” HRS objected to the costs award, asserting that the Freemans were not asked to attend the previous hearing, that their presence at that time was strictly voluntary, and that HRS only proposed that they be the children’s custodians after January 25. The objection was effectively denied (“It’s always good to see you. Now go away.”).
HRS first contends that no statute or rule authorized the circuit court to require HRS to pay the Freemans their costs for attending the January 25 disposition hearing. As Judge Daukseh noted, HRS is correct.
Second, HRS argues that the costs award was in reality a punishment for failing to follow the court’s seven-day requirement and, as such, the costs judgment , was improperly entered because the court failed to follow the required contempt procedures. No written order directing that reports be submitted to the court seven days prior to the hearing appears in the abridged record and the ree- *769 ord suggests no such written order exists. Whether there was an oral instruction that rises to the level of an order is unclear,[1] but. HRS does not dispute the judge’s statement that the seven day requirement was a longstanding one which was well known to them. HRS principally argues that such an order would conflict with chapter 39, since, under section 39.408(3)(c), HRS is allowed to submit a predisposition study “up to (and including) forty-eight hours before the disposition hearing.” Section 39.408(3)(c) provides:
A copy of the predisposition study must be furnished to all parties no later than 48 hours before the disposition hearing.
§ 39.408(3)(e), Fla. Stat. (1995) (emphasis added). This statute, however, does not control at what time the court must receive a copy of the predisposition report. Unlike Judge Dauksch, I see no reason why the court could not require it be supplied with the report earlier than three days before the date scheduled for the disposition hearing. HRS has offered no reason why this would be impractical, undesirable or an abuse of discretion and the lower court’s expressed need to have the reports sooner in order to have adequate time to prepare appears reasonable.
Given that HRS was not empowered by section 39.408(3)(c) to disobey a court order to submit the predisposition report seven days prior to the disposition hearing, the remaining problem is whether the circuit court acted properly in punishing HRS for its disobedience. Rule 8.285 of the Florida Rules of Juvenile Procedure outlines contempt procedures in juvenile court. Rules 3.830 and 3.840 of the Florida Rules of Criminal Procedure also set out the methods for prosecuting criminal contempt. None of these was followed in this case. The court does have inherent authority to impose a contempt sanction on a litigant or on counsel as a proper and necessary disciplinary tool in aid of its necessary court functions [2] but the court should at least afford the miscreant an opportunity to be heard as to why the sanction should not be imposed. In this case, the court summarily ordered payment of expenses of non-parties as a sanction, based on an order not of record. Under the circumstances, this order cannot be sustained.

. Contempt may be based on an oral order of a court. Giller v. Shane, 648 So.2d 1262, 1262 (Fla. 3d DCA 1995); 17 Am.Jur.2d Contempt § 130, at 488 (1990).

. Shelley v. District Court of Appeal, 350 So.2d 471 (Fla.1977).