744 So.2d 489 (1999)
CARNIVAL CORPORATION, a/k/a Carnival Cruise Lines, Inc., Curtis J. Mase, and Mase & Sreenan, P.A., Petitioners,
v.
Yvonne BEVERLY, Respondent.
No. 98-2337.
District Court of Appeal of Florida, First District.
September 16, 1999.
Rehearing Denied November 12, 1999.
*490 Beverly D. Eisenstadt of Mase & Sreenan, P.A., Miami, for petitioners.
Joseph P. Milton of Milton, Leach & D'Andrea, P.A. and William T. Lassiter, Jr. of Lassiter & Sessions, Jacksonville, for respondent.
VAN NORTWICK, J.
Carnival Corporation (Carnival), its attorney, Curtis J. Mase, and Mase's law firm, Mase & Sreenan, P.A., seek certiorari review of an order which, as a sanction for Mase's conduct at trial, disqualified Mase from further participation in the underlying personal injury action by Yvonne Beverly, respondent, against petitioner Carnival. Petitioners argue that certiorari relief is appropriate because (i) the trial court lacks the authority to sanction an attorney by disqualification in a case pending before it; (ii) even if the trial court possessed such authority, Mase's actions at trial did not warrant disqualification; and (iii) the disqualification necessarily constituted a finding of criminal contempt against Mase, but without providing the required due process. It is clear that the trial court possesses the summary contempt power to sanction an attorney by disqualification. Nevertheless, because the trial court did not provide clear and unambiguous directions to counsel concerning the conduct requirement at trial, we find that the trial court abused its discretion in exercising its summary contempt power and in assessing the extraordinary sanction of disqualification. Accordingly, we grant the petition for writ of certiorari, and quash the order.

Factual and Procedural History
In May 1995, Beverly and her family took a cruise on a Carnival ship, the Ecstasy. The ship made port in Key West, where some of the Beverly party planned to go ashore. The Beverly family sought to take the elevator down to the lower deck, where they could board a launch to shore. In the action below, Beverly alleged that a Carnival employee refused to allow her and her family to use the elevator and, instead, directed them to take the stairs. She fell on the stairs suffering significant personal injuries.
Beverly's complaint against Carnival was filed in 1995. The matter came to trial on May 28, 1998, where the events occurred which are the subject of this appeal. The record indicates that the trial was highly contentious. Even from the cold record, the animosity between the parties' attorneys is obvious. The focus of our opinion, however, is limited to the trial conduct of Mase which led to his disqualification by the trial court.
During voir dire, Mase asked a venireman if he would agree "that changes in the *491 version of how the accident happened after an individual hires a lawyer are suspect?" Beverly's counsel objected, requesting a sidebar conference at which he argued that Mase's comment impugned the integrity of Beverly's attorneys in that Mase was implying that counsel was involved in the suborning of perjury by Beverly. Mase answered that he had not mentioned the names of any attorneys. The trial court overruled the objection.
As the trial proceeded, in his opening statement Mase pointed out that the medical reports prepared immediately after Beverly's fall indicate that Beverly missed a step or steps and then fell. He noted that, later, Beverly's story changed and she contended she slipped on wet steps. Specifically, Mase said:
Well, something happened between June and the next time we find a medical entry concerning Ms. Beverly. She hired a lawyer, Mr. Lassiter.
And after she hired Mr. Lassiter, we have a new entry in the medical records. She slipped on some stairs which were wet....
There was no immediate objection. Mase continued with his opening statement, during which he was admonished several times by the trial court for presenting argument beyond what the evidence at trial would show and for "making a final argument," rather than an appropriate opening statement. During one of the several sidebar conferences, Beverly's counsel again complained that, when Mase pointed out that Beverly had given a different version of the facts after she retained counsel, Mase was resorting to unprofessional attacks on Beverly's attorneys by implying that Beverly's counsel had suborned perjury in some manner. Beverly asked the trial court to admonish Mase and warn him that he would be sanctioned if he continued. The trial court agreed that Mase's comments could be considered to mean that Beverly had been encouraged by her counsel to change her story. Mase argued that his comments were appropriate and requested leave to provide supporting authority to the court. The trial court instructed Mase that "in this phase of the trial" he was prohibited from referring to the fact that, after Beverly retained counsel, her statements varied from "the statements she gave to the shipboard doctor, to the nurses, and to the emergency-room physician." The trial court emphasized the extent of the ruling, stating that "... at this point, until you [Mase] can give me the case law where I can read it, there will be no further mention of this."
Mase's opening statement continued, and the trial court again was required to admonish Mase for "making a final argument to the jury." Specifically, the court warned: "Mr. Mase, you're going far beyond and I've told you, and I'm not going to tell you anymore. You can pout or whatever. Save this for your final argument...." Immediately thereafter, the court said "next, time, there's going to be some sanctions."
The next morning, before the trial proceedings began, the trial court brought up the matter of Beverly's motions to sanction Mase. The trial court advised that it was denying the motions made during the sidebar discussion the previous day, noting that in fact the early medical reports were different than Beverly's later explanation of the accident. The trial court found that Mase had not impugned Beverly's counsel, but advised Mase that "you're on very dangerous ground" and offered to give a curative instruction if counsel for Beverly desired. The trial court ruled that it would allow Mase's cross-examination on the subject, but reminded him that he was "on pretty dangerous ground." Mase acknowledged that he was "on the edge," and the court emphasized that "you're right on the razor's edge." Beverly's motion for a mistrial was denied.
As the trial proceeded, John Brown, Beverly's son, testified that, when he sought to use the elevator while leaving the ship for an earlier snorkeling excursion, *492 a Carnival employee told him that he must use the stairs, rather than the elevator. On cross-examination, Mase sought to impeach Brown concerning his detailed memory of the Carnival employee's instructions, questioning him, as follows:
Q. You talked to [counsel for Beverly] before you took the stand here today, didn't you?
A. Yes, sir.
Q. You discussed what you were going to say to this jury?
A. Discussed what we was going to say?
Q. Yes, sir.
A. He justwe talked aboutwell I ain't never been in a courtroomwhat would go on, you know, and different things.
Q. Standing out there in that hallway, he explained to you exactly what he needed for you to say to this jury, didn't he?
[COUNSEL FOR BEVERLY]: Objection Your Honor.
Another sidebar conference followed. At sidebar, Beverly moved to strike Carnival's pleadings and to hold Mase in contempt. Mase maintained that there was nothing improper about his question. Counsel for Beverly asked the record to show that Mase was standing "smirking" and moved the trial court to sanction Mase by prohibiting him from further participation in the proceedings, arguing that co-counsel for Carnival could proceed in the trial. Beverly contended that Mase had engaged in a pattern of conduct of not honoring the trial court's rulings and of continuing to impugn Beverly's counsel before the jury, and argued the "only way to stop it was to get Mase out of the case." In response, Mase accused Beverly's counsel of intentionally disrupting the proceedings by their continual objections. The trial court noted that this was the second time Mase had implied misconduct by Beverly's attorneys, and that Mase had been warned the first time during his opening statement. The court then indicated that it would disqualify Mase from further participation in the case, but would give him an opportunity to argue the issue further the next morning. At that point, Mase moved for a mistrial on the ground that Carnival was not being represented by counsel of its choosing.
The next morning, the trial court entered a mistrial on its own motion. The trial court then entered a written order disqualifying Mase from further participation in the case. In this order, the trial court made the following findings:
During opening statements defense counsel Curtis Mase made intentionally inappropriate remarks which suggested misconduct by Mr. Lassiter, one of Plaintiff's counsel. This Court strongly admonished Mr. Mase for his conduct and ordered him to refrain from any similar conduct throughout the trial.
* * *
[D]uring cross-examination of one of Plaintiff's fact witnesses, John Brown, Mr. Mase again intentionally suggested misconduct by Plaintiff's counsel, in direct violation of this Court's order. Mr. Lassiter moved ore tenus for Mr. Mase's disqualification from any further participation in this case and the Court granted the motion, but gave Mr. Mase an overnight opportunity to submit his case law and argument to the Court on the morning of Friday, May 29, 1998. An addendum to this order will be the official transcript of the total trial proceedings, as soon as the same is available, showing the totality of Mr. Mase's improper conduct. Plaintiff's counsel were likewise allowed to submit case law and argument in response. The Court reviewed the cases submitted and heard argument of counsel. The Court then ratified its Disqualification of Mr. Mase from any further participation in this case, and, on the Court's own motion, over the strenuous objections of the Plaintiff's [sic], declared a mistrial. The *493 Court finds that the sole cause of the mistrial was the conduct of Mr. Mase in violating the Court's Orders and undoubtedly prejudicing the jury as a result. Plaintiffs [sic] have suffered yet another delay in their trial and needless waste of time and resources as a result. Judicial economy and resources have been squandered as well.
The same day, the trial judge granted Carnival's motion for his own disqualification. A new trial judge scheduled a hearing on Carnival's motion for reconsideration of the order of disqualification, but ruled that Mase could not participate in that hearing.
Thereafter, Carnival filed a petition for writ of prohibition in this court. This court entered an order denying prohibition, but ruled that Carnival's petition would be treated as a petition for writ of certiorari and imposed a stay on further proceedings in the lower court.

Standard of Review
A trial court's decision to sanction an attorney for trial misconduct is reviewed under an abuse of discretion standard. See Belote v. Slye, 206 So.2d 276 (Fla. 1st DCA 1968). Because the trial court has witnessed the actions at issue, the trial court is in the best position to determine whether it is necessary to summarily punish counsel for contemptuous conduct. In Re Gustafson, 650 F.2d 1017, 1023 (9th Cir.1981).[1] Thus, appellate courts "give great deference to a trial judge's explicit determination that ... summary procedures are necessary." Id.

Inherent Authority of Trial Court
Petitioners argue that the trial court did not possess the authority to sanction Mase by disqualification in the underlying case. We cannot agree.
The adversarial method of trial imposes dual and conflicting obligations on attorneys. See, generally, Nathan M. Crystal, Limitations on Zealous Representation in an Adversarial System, 32 Wake Forest L.Rev. 671 (1997). As an advocate, the attorney has a duty to zealously represent his or her client within the bounds of the law and rules of professional conduct. The comment to rule 4-1.3, Rules Regulating The Florida Bar, explains that
[a] lawyer ... may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.
At the same time, "[a] lawyer is ... an officer of the legal system, and a public citizen having special responsibility for the quality of justice." Preamble, Chapter 4, Rules Regulating The Florida Bar. Thus, an attorney has a duty to refrain from advocacy that undermines or interferes with the functioning of the judicial system. See Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1546 (11th Cir.1993) (Judge Fay states: "An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. This concept is as old as common law jurisprudence itself."); see, e.g., rules 4-3.5(c) ("a lawyer shall not engage in conduct intended to disrupt a tribunal"), and 4-8.4(d) (a lawyer shall not "engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly ... disparage ... witnesses ... *494 or other lawyers on any basis...."), Rules Regulating The Florida Bar.[2] When professional judgment does not restrain a lawyer's zealous advocacy, however, the courts must act to assure that aggressive advocacy does not frustrate or disrupt the administration of judicial proceedings. See In Re Terry, 128 U.S. 289, 302, 9 S.Ct. 77, 79, 32 L.Ed. 405 (1888); Sandstrom v. State, 309 So.2d 17 (Fla. 4th DCA 1975), cert. dismissed, 336 So.2d 572 (Fla.1976); see also Louis S. Raveson, Advocacy and Contempt: Constitutional Limitations on the Judicial Contempt Power, Part One: The Conflict Between Advocacy and Contempt, 65 Wash.L.Rev. 477, 539-40 (1990).[3]
From the early English common law, when contempt was committed in the presence of the court while it was in session, the use of summary contempt was considered an inherent judicial power necessary to maintain order in the court and to protect the court's dignity. See Teresa S. Hanger, The Modern Status of the Rules Permitting a Judge to Punish Contempt Summarily, 28 Wm. Mary L.Rev. 553, 554 (1987). The United States Supreme Court has recognized that summary contempt power is inherent in all courts, see In re Terry, 128 U.S. at 306, 9 S.Ct. 77 and the Supreme Court of Florida has determined that "the imposition of a summary contempt sanction is a proper and necessary disciplinary tool to aid a judicial tribunal in carrying out its necessary court functions...." Shelley v. District Court of Appeal, 350 So.2d 471, 472 (Fla.1977). It is well-settled that "counsel commits a direct criminal contempt when counsel, in the presence of the court, violates a direct order of the trial court relating to the conduct of court proceedings ...," Vizzi v. State, 501 So.2d 613, 619 (Fla. 3d DCA 1986), even if the order is erroneous. Soven v. State, 622 So.2d 1123, 1125 (Fla. 3d DCA 1993); McQueen v. State, 531 So.2d 1030, 1031 (Fla. 1st DCA 1988); Rubin v. State, 490 So.2d 1001, 1003-04 (Fla. 3d DCA 1986).
Petitioners argue that in Burns v. Huffstetler, 433 So.2d 964 (Fla.1983), the Florida Supreme Court established that trial courts do not possess the power to disqualify counsel as a sanction. Burns does explain the limits on the judiciary's *495 use of the summary contempt sanction power to discipline an attorney. Contrary to the argument of petitioners, however, Burns confirms the inherent sanction authority of a court to disqualify an attorney in a case in which the attorney is found guilty of contemptuous conduct.
In Burns, based upon allegations that defense counsel had impeded the first degree murder trial of his client by requesting continuances on false grounds and admitting the defendant into a psychiatric hospital, the trial court found defense counsel in contempt and, as a sanction, removed him as counsel of record in the case and required him to surrender his license to practice law as an alternative to incarceration. Id. at 965. The disqualified attorney filed a petition for writ of prohibition, asserting that the trial court had no authority to order the surrender of his license to practice law. In granting the writ, the Burns court observed that "[t]here are three alternative methods for disciplining of attorneys...." Id. The first two methods are set forth in the Rules Regulating The Florida Bar. Those methods involve either the "traditional grievance committeereferee process," Burns, 433 So.2d at 965, in which an attorney is prosecuted by The Florida Bar and sanctions are imposed by the Florida Supreme Court, now governed by rules 3-3.1 through 3-7.7, Rules Regulating The Florida Bar; or a proceeding initiated by the judiciary, prosecuted by the state attorney in a trial before a circuit court judge, and subject to review by the supreme court. Burns, 433 So.2d at 965; see rule 3-7.8, Rules Regulating The Florida Bar.
The third method of discipline "is the exercise of the inherent power of the courts to impose contempt sanctions on attorneys for lesser infractions...." Burns, 433 So.2d at 965. The Burns court discussed the significance of this inherent sanction power, as follows:
[T]he imposition of a summary contempt sanction is a proper and necessary disciplinary tool to aid a judicial tribunal in carrying out its necessary court functions.... The contempt power is a proper and historical alternative to existing formal disciplinary proceedings. The Integration Rule of The Florida Bar, Article XI, Rule 11.14, providing for disciplinary proceedings in circuit courts, is no bar to the use of this summary power in cases of lesser infractions of the various rules governing the practice of law which affect the necessary operations of a court.
Id., quoting Shelley v. District Court of Appeal, 350 So.2d at 472-73 (emphasis in Burns). The court emphasized, however, that "[w]hen the offense is serious enough to warrant a suspension or disbarment ... either The Florida Bar grievance process or the judicial disciplinary process must be utilized...." Id. at 966. Thus, in Burns, the court held that the trial court's order requiring the surrender of an attorney's license to practice law "amounts to a suspension from the practice of law and that such a punishment may not be imposed as a sanction...." Id.; see also Gifford v. Payne, 432 So.2d 38, 39 (Fla.1983). The court explained, however, that its "holding is not intended to prohibit the trial court from using contempt proceedings to punish attorney misconduct in this or any other cause." Burns, 433 So.2d at 966. Importantly for the instant case, the court in Burns expressly found "no basis in this record to vacate the order removing petitioner as counsel for the criminal defendant." Id.
Thus, under Burns, it is clear that, while Florida courts lack the authority to suspend an attorney from the practice of law, they possess the inherent contempt power to sanction an attorney by the removal of that attorney as counsel in the case in which the conduct occurred. Id.[4] Nevertheless, disqualification "strikes *496 at the heart of one of the most important associational freedoms that a person may havethe right to choose one's own lawyer." Kusch v. Ballard, 645 So.2d 1035, 1036 (Fla. 4th DCA 1994) (Farmer, J., concurring). Accordingly, disqualification of a party's chosen counsel is a harsh and drastic sanction and an extraordinary remedy that should be resorted to sparingly. Lee v. Gadasa Corp., 714 So.2d 610, 612 (Fla. 1st DCA 1998); City of Apopka v. All Corners, Inc., 701 So.2d 641, 644 (Fla. 5th DCA 1997); Pascucci v. Pascucci, 679 So.2d 1311 (Fla. 4th DCA 1996). It is because disqualification is such an extraordinary sanction that a trial court must exercise its discretion to disqualify counsel only as a last resort to prevent further conduct in defiance of the court's order or authority. In Re Gustafson, 650 F.2d at 1022. Even then, the court's power should be exercised with great caution, and the court should consider the use of lesser sanctions before invoking disqualification.[5]

Requirements for Use of Summary Contempt
The order on review does not expressly find Mase in contempt. Nevertheless, because the sanction assessed is necessarily founded upon the court's inherent contempt powers, we conclude that a finding of direct contempt is implicit in the instant order. Further, although the trial court possessed the authority to assess compensatory fines against Mase for civil contempt, see Lamb v. Fowler, 574 So.2d 262 (Fla. 1st DCA 1991), the order before us must be characterized as one based on direct criminal contempt because it provided punishment rather than coerced compliance with a court order. See Young v. Wood-Cohan, 727 So.2d 322, 323-24 (Fla. 4th DCA 1999); Fredericks v. Sturgis, 598 So.2d 94, 96-98 (Fla. 5th DCA 1992); Anderson v. City of Wilton Manors, 490 So.2d 1313, 1315 (Fla. 4th DCA 1986).
A court may hold a person or party in direct criminal contempt for the violation of a court order or for an act that is contemptuous on its face. See Johnson v. Bednar, 573 So.2d 822, 824 (Fla.1991) ("If a party can make oneself a judge of the validity of orders issued by trial courts, and by one's own disobedience set them aside, then our court's are devoid of power, and the judicial power, both federal and state, would be a mockery."); Martin v. State, 711 So.2d 1173, 1174-75 (Fla. 4th DCA 1998); Lawrence v. Lawrence, 384 So.2d 279, 280 (Fla. 4th DCA 1980). "Counsel's perception of the correctness of the trial court's ruling is no excuse for engaging in contemptuous behavior and disregarding the court's order." Soven v. State, 622 So.2d at 1125 (citations omitted). If counsel believes a trial court ruling is incorrect, the remedy is to challenge those rulings at the appellate level. Id. "[A]n aggrieved party's failure to abide by the order may be punished by contempt even if the order is ultimately found to be erroneous." Rubin v. State, 490 So.2d at 1003; see also In re Weinstein, 518 So.2d 1370, 1373-74 (Fla. 4th DCA 1988).
Prior to assessing contempt sanctions for a violation of a court order, the trial court must first have issued a clear and unambiguous order or otherwise clearly *497 established for the record the standards of conduct required by the court. See U.S. v. Robinson, 922 F.2d 1531, 1534-35 (11th Cir.1991). "One may not be held in contempt of court for violation of an order ... which is not clear and definite so as to make the party aware of its command and direction." Lawrence v. Lawrence, 384 So.2d at 280; see also Levine v. State, 650 So.2d 666, 668 (Fla. 4th DCA 1995).
During the trial below, counsel for respondent provided Mase with a copy of The Florida Bar Trial Lawyers Section Guidelines for Professional Conduct, which was represented to have been adopted in the Fourth Judicial Circuit. Respondent argues that Mase's conduct also violated those guidelines. We note that courts have used the standards of conduct specified in local rules and civility codes as the basis for sanctions, see In re Maurice, 167 B.R. 114, 127 (Bankr.N.D.Ill.1994), 179 B.R. 881, 882 (Bankr.N.D.Ill.1995), aff'd, 69 F.3d 830, 832 (7th Cir.1995) (attorney sanctioned for, among other things, violations of Seventh Circuit Standards of Professional Conduct); McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1486-87 (5th Cir.1990) (sanction for violation of Texas Lawyer's Creed); Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n, 121 F.R.D. 284, 287-88 (N.D.Tex.1988) (en banc) (adoption of standards of litigation conduct for Northern District of Texas as basis for sanctions); although the practice of enforcing aspirational professionalism or civility codes through sanctions has been criticized. See, e.g., Green v. Green, 263 Ga. 551, 437 S.E.2d 457, 461 (1993) (J. Sears-Collins concurring); see also Amy R. Mashburn, Professionalism as a Class Ideology: Civility Codes and Bar Hierarchy, 28 Val. U.L.Rev. 657, 706 (1994). The record here, however, does not reflect that the trial court imposed or applied those guidelines below. Because these guidelines were not applied by the trial court in assessing sanctions on Mase, we do not address whether a violation of the guidelines could also be a basis for imposing sanctions.
Further, under rule 3.830, Florida Rules of Criminal Procedure, in a proceeding for direct criminal contempt, a trial court must
inform the defendant of the accusation against the defendant and inquire as to whether the defendant has any cause to show why he or she should not be adjudged guilty of contempt by the court....
"Scrupulous compliance with rule 3.830 is required because its provisions constitute the essence of due process." Martin v. State, 711 So.2d at 1174 (quoting Kahn v. State, 447 So.2d 1048 (Fla. 4th DCA 1984)). The rule assures that "[b]efore a person may be held in criminal contempt, he must be sufficiently advised of the charge so as to accord him a reasonable opportunity to meet it by way of defense or explanation." Young v. Wood-Cohan, 727 So.2d at 324.
In the order on review, the trial court disqualified Mase for "a direct violation of this Court's order" due to Mase's inference that Brown changed his explanation of the facts after conferring with counsel. The record reflects, however, that during the trial proceedings the trial court responded in an ambiguous and inconsistent manner to Mase's comments and examination concerning a witness's alleged change of explanation after retaining or conferring with counsel.
Initially, the trial court overruled objections concerning voir dire inquiry on the subject. Then, following several references to Beverly's change of her explanation of the accident during Mase's opening statement, the trial court instructed Mase "at this phase of the trial" not to refer to the fact that Beverly changed her explanation after retaining counsel and warned Mase that he was "on dangerous ground," which Mase expressly acknowledged. When the trial court denied respondent's motion for sanctions, however, it seemed to change its view of Mase's statements by *498 finding that Mase had not impugned Beverly's counsel, by expressly noting that the medical reports appeared to indicate that Beverly's explanation of the accident had changed over time, and by allowing Mase to proceed with cross-examination on the subject. During Mase's opening statement the trial court did admonish Mase and warn that sanctions would be assessedbut this warning was given for Mase's argumentative opening statement, not for his implications that Beverly changed her explanation after retaining counsel.
We readily acknowledge that the necessity of constant admonitions by the trial court for various trial conduct combined with Mase's "smirking" and "pouting," observed on the record, would disturb any judge and place serious strain on any judicial patience. Clearly, the trial judge was faced with a difficult task in the administration of this trial, and the use of sanctions certainly may well have been appropriate. Nevertheless, the trial court's position during the trial with respect to Mase's statements about Beverly changing her explanation of the accident was ambiguous and inconsistent. After allowing Mase to cross-examine on the subject, the trial court did not caution or warn Mase that he would be cited for contempt if he continued to question witnesses about alleged changes in their testimony after conferring with counsel. See Carroll v. State, 327 So.2d 881, 882 (Fla. 3d DCA 1976). Thus, we find that the trial court did not issue a clear and unambiguous order or otherwise make Mase aware of the court's directions regarding trial conduct and did not provide Mase with an opportunity to show cause why he should not be held in contempt. Lawrence v. Lawrence, 384 So.2d at 280; Young v. Wood-Cohan, 727 So.2d at 324. Accordingly, we must conclude that it was an abuse of discretion to exercise the trial court's contempt powers and impose the extraordinary sanction of disqualification for Mase's conduct.
In granting the petition for writ of certiorari, we share the concerns of other courts under similar circumstances that, even if our opinion is legally correct, it may have the effect of encouraging uncivil and unprofessional trial conduct. See, e.g., Evanoff v. Evanoff, 262 Ga. 303, 418 S.E.2d 62, 63 (1992) (J. Benham concurring). Our opinion, however, should not be read as condoning the lack of professionalism and civility revealed by the record of the trial below.
Based upon the foregoing analysis, we conclude that the order disqualifying Mase constitutes a material departure from the essential requirements of law. Thus, we grant the petition for writ of certiorari, and quash the order granting the motion to disqualify counsel.
PETITION GRANTED; ORDER QUASHED.
BOOTH, J., concurs and BENTON, J., concurs with written opinion.
BENTON, J., concurring.
If defense counsel was smirking at trial, he must be chortling now. More than four years have elapsed since Ms. Beverly's slip and fall and she has yet to get her case to a jury.
In part to avoid just such inordinate delay, the United States Supreme Court decided this term that an attorney disqualified for a discovery violation could not appeal her disqualification until final judgment had been entered:
To permit an immediate appeal from such a sanctions order would undermine the very purposes of Rule 37(a), which was designed to protect courts and opposing parties from delaying or harassing tactics during the discovery process. Immediate appeals of such orders would undermine trial judges' discretion to structure a sanction in the most effective manner. They might choose not to sanction an attorney, despite abusive conduct, in order to avoid further delays in their proceedings. Not only would *499 such an approach ignore the deference owed by appellate courts to trial judges charged with managing the discovery process, see Firestone Tire & Rubber Co., 449 U.S., [368] at 374, 101 S.Ct. 669[, 66 L.Ed.2d 571] [ (1981) ], it also could forestall resolution of the case as each new sanction would give rise to a new appeal. The result might well be the very sorts of piecemeal appeals and concomitant delays that the final judgment rule was designed to prevent.
Cunningham v. Hamilton County, Ohio, 527 U.S. 198, ___, 119 S.Ct. 1915, 1922, 144 L.Ed.2d 184 (1999) (footnote omitted). Out of such considerations, if we were writing on a blank slate, I would vote against reviewing the order of disqualification on petition for certiorari in the present case.
But the Florida cases provide ample precedent for review of such orders by petitions for writs of certiorari. See Pinebrook Towne House Ass'n, Inc. v. C.E. O'Dell and Assocs., Inc., 725 So.2d 431, 433 (Fla. 2d DCA 1999) (quashing order of disqualification); Eplee v. Eplee, 722 So.2d 277, 278 (Fla. 1st DCA 1998) (same). See also Transmark, USA, Inc. v. State, Dep't of Ins., 631 So.2d 1112, 1115 (Fla. 1st DCA 1994) (reaching merits of order denying disqualification of counsel and denying certiorari); Kenn Air Corp. v. Gainesville-Alachua County Reg. Airport Auth., 593 So.2d 1219 (Fla. 1st DCA 1992). On the basis of stare decisis, I join the majority in reaching the merits.
On the merits, I concur in the court's judgment, but do so without subscribing to any theory that a lawyer must commit contempt of court in order for disqualification to be proper. See generally Cunningham, 527 U.S. at ___, 119 S.Ct. at 1918 (magistrate disqualifying counsel for discovery violation "took care to specify, however, that he had not held a contempt hearing and that petitioner was never found to be in contempt of court"); Henriquez v. Temple, 668 So.2d 638, 639 n. 1 (Fla. 3d DCA 1996) (disqualification ordered for "activities of ... counsel ..., whether committed innocently, (which this court would like to believe) or not"). See also Double T Corp. v. Jalis Dev., Inc., 682 So.2d 1160 (Fla. 5th DCA 1996) (counsel disqualified for conflict of interest); Tuazon v. Royal Caribbean Cruises, Ltd., 641 So.2d 417 (Fla. 3d DCA 1994) (same). Where trial counsel persists in conduct that prevents a fair trial and no lesser remedy suffices, the trial judge should have full authority to disqualify counsel ..., whether or not counsel's conduct has been contumacious, and without having to resort to the procedures required in contempt cases.
NOTES
[1] Rule 3.830, Fla.R.Crim.P., "is patterned after Federal Rule of Criminal Procedure 42(a)." Committee Notes, Rule 3.830, Fla. R.Crim.P., In re Amendments to Florida Rules of Criminal Procedure, 606 So.2d 227, 336 (Fla.1992). "Federal case law which construes a federal rule after which a Florida rule is patterned may be considered in interpreting the Florida rule...." Sheradsky v. Basadre, 452 So.2d 599, 602 (Fla. 3d DCA 1984) (citations omitted), rev. denied, 461 So.2d 113 (Fla.1985). Thus, when considering the summary contempt power of courts, Florida courts have frequently cited to federal authority. See, e.g., Shelley v. District Court of Appeal, 350 So.2d 471, 473 (Fla.1977).
[2] As Judge Marvin E. Aspen succinctly states: "[A]ny notion that the duty to represent a client trumps obligations of professionalism is, of course, indefensible as a matter of law." Marvin E. Aspen, Let Us Be Officers of the Court, A.B.A.J., July 1997 at 94. The rules of professional conduct governing Florida lawyers recognize the lawyer's professional obligation to resolve these conflicting professional obligations:

A lawyer's responsibilities as a representative of clients, an officer of the legal system, and a public citizen are usually harmonious....
Difficult ethical problems may arise from a conflict between a lawyer's responsibility to a client and the lawyer's own sense of personal honor, including obligations to society and the legal profession.... Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the rules [of professional conduct].
Preamble, Chapter 4, Rules Regulating The Florida Bar. In balancing conflicting professional obligations,
the lawyer's function includes a measure of objectivity in the implementation of legal skills, goals, or practices.... [O]bjectivity... refer[s] to a sense of impartiality in evaluating competing interests. In other words, objectivity is the ability to distance oneself from personal and client desires in order to evaluate the effect of potential actions on clients, third parties, and the legal system.
Paul C. Zacharis, Reconciling Professionalism and Client Interests, 36 Wm. & Mary L.Rev. 1303, 1307 (1995).
[3] Professor Rob Atkinson urges courts to "continue, perhaps even redouble, their present efforts to maintain at least the minimum order required for the rule of law, particularly in judicial administration." Rob Atkinson, A Dissenter's Commentary on the Professionalism Crusade, 74 Tex.L.Rev. 259, 325 (1995). He cautions, however, that "[t]hey should be careful, however, in their efforts to police ... incivility ... and be wary of using highly coercive penalties in view of the dangers of chilling vigorous advocacy, and the difficulties of distinguishing conscientious activism from ill-motivated aggression." Id.
[4] Respondent's additional reliance on Double T Corp. v. Jalis Dev., Inc., 682 So.2d 1160 (Fla. 5th DCA 1996) and Tuazon v. Royal Caribbean Cruises, Ltd., 641 So.2d 417 (Fla. 3d DCA 1994), as authority for the trial court's general power to disqualify counsel, is misplaced. Both of these cases are distinguishable from the instant appeal because, in both cases, the trial court disqualified an attorney, not for misconduct, but for a conflict of interest related to the attorney's possession of confidential information of an opposing party in litigation. The court's power to sanction an attorney for trial misconduct arises from the court's inherent contempt power. See Burns v. Huffstetler, 433 So.2d 964, 965-66 (Fla.1983); Shelley v. District Court of Appeal, 350 So.2d 471, 472 (Fla.1977).
[5] For example, the court may issue curative instructions, a reprimand, an assessment of fines, and warnings that future misconduct will subject the attorney to summary contempt proceedings and disqualification for further participation in the proceedings. See, e.g., Koller v. Richardson-Merrell, Inc., 737 F.2d 1038, 1056, n. 49 (D.C.Cir.1984).