# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2466
_____

STEPHEN B. SCHROLL,

Appellant,

v.

NANCY SMITH SCHROLL,

Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
David Rimmer, Judge.

December 14, 2018

WINSOR, J.

The Schrolls married in 1981 and divorced in 2016. After the former husband failed to comply with the court's equitable distribution order (an order this court has subsequently reversed, *Schroll v. Schroll*, 227 So. 3d 232 (Fla 1st DCA 2017)), the trial court held him in contempt. The former husband now appeals, arguing that the court lacked authority to enforce an equitable-distribution scheme through its contempt powers. We reverse.

The trial court's final judgment appeared to award each party approximately $1.2 million in marital assets as part of the equitable distribution. The former wife received proceeds from the sale of the marital home, an annuity, and an IRA. The former husband received the family business (StorkLand, a baby supply

store), property the business was located on, and several StorkLand-related accounts. Additionally, the court awarded both parties specific dollar amounts from a Vanguard money market account. The Vanguard account was worth approximately $450,000 when the case began, but as the case went along, the former husband used money from the account to pay for "the parties' living expenses, including attorneys' fees and costs, new vehicles for both parties, moving expenses, and paying off the mortgage on the former marital residence before it sold." *Schroll*, 227 So. 3d at 236. As a result, the account was worth only $350,000 by the time of the final order. Yet the final judgment awarded each side amounts that totaled more than that. On appeal, this court reversed because the court failed to value the parties' assets "as of a date closer to the final hearing . . . because those assets had significantly declined in value during the course of litigation." *Id.* at 236-37.

As to this appeal, the former husband explains, "[b]ecause of the trial court's faulty equitable distribution scheme, confusion ensued in the trial court on post-judgment enforcement, which ultimately led to the Former Husband's incarceration and then the instant appeal." Init. Br. at 4. Essentially, the situation devolved into a series of tit-for-tat exchanges, with the parties transferring money between their various personal, joint, and business accounts, and each claiming entitlement to certain funds. They disagreed about much.

After the court entered the final judgment, the former wife withdrew $40,000 from the StorkLand business account, leaving the account with insufficient funds to cover outstanding checks. The former husband testified that, to replace the funds withdrawn by the former wife, he transferred $40,000 from the Vanguard account to the parties' joint checking account. (According to the former husband, the withdrawal had to go through the joint account because "it was the only one linked to the Vanguard account.") But before he could transfer those funds to the StorkLand account, the former wife captured the additional $40,000, withdrawing it from the joint account. She later returned $33,000 to StorkLand, but kept $7,000, which she claimed was hers. She also kept the first $40,000 she withdrew. The former husband subsequently withdrew the amount the final judgment

allocated him from the Vanguard account, plus an additional $7,000 to make up for what the former wife withdrew (wrongfully, he believed) from the StorkLand account. As a result of all of this, the Vanguard account was left without enough to cover what the (now-reversed) final judgment said the former wife should take from it.

The former wife filed a contempt motion, and the court ordered the former husband "to fully cooperate in the transfer of the funds remaining in the Vanguard account." Following a hearing, the former husband gave the former wife's attorney a signed document allowing her to access the Vanguard account. But when the former wife's attorney found insufficient funds in the account, the former wife filed a second contempt motion and requested an ex parte order, which the court granted. The ex parte order directed the former husband to transfer from the Vanguard account "or otherwise provide to the former wife from some other source the sum of $287,276.50" within three business days (by Christmas Eve). After the former husband failed to comply, the former wife filed a certificate of non-compliance and requested an order of incarceration.

At a hearing on the pending motions, the former husband testified (and the former wife confirmed) that the funds remaining in the Vanguard account—approximately $133,000—had been transferred to the former wife. Although the financial records and the former wife's testimony confirmed the former husband's accounting, the court found his testimony to be "not very credible," held him in contempt, and ordered his immediate incarceration. The former husband was taken into custody, but he was released later that day, after the parties' adult daughter tendered the purge amount.

The former husband now appeals, arguing that the court abused its discretion in entering the contempt order. At the outset, we note that the fact that this court reversed the equitable distribution scheme is not alone a basis to reverse. "[A]n aggrieved party's failure to abide by [an] order may be punished by contempt even if the order is ultimately found to be erroneous." *Carnival Corp. v. Beverly*, 744 So. 2d 489, 496 (Fla. 1st DCA 1999) (quoting *Rubin v. State,* 490 So. 2d 1001, 1003 (Fla. 3d DCA 1986)). But that

is not the argument the former husband makes. He instead argues that the court lacked authority to enforce the monetary judgment through its contempt power.

The Florida Constitution provides that "no person shall be imprisoned for debt, except in cases of fraud." Art. I, § 11, Fla. Const. Accordingly, this court has held that "[o]bligations incurred by a party in a marital property settlement are not subject to enforcement through contempt proceedings." *Taylor v. Taylor*, 653 So. 2d 1126, 1127 (Fla. 1st DCA 1995). There is an exception for child support or alimony obligations, *see Schneider v. Schneider*, 189 So. 3d 276, 278 (Fla. 1st DCA 2016), but that exception is not applicable here: These parties had no minor children, and the former wife received only nominal alimony. *Cf. Lee v. Lee*, 710 So. 2d 186, 187 (Fla. 1st DCA 1998) (noting that it is "necessary to look at the circumstances of the particular debt under consideration, as well as the specific provisions of the judgment itself, in order to determine if the obligation is one for alimony or family support"). Indeed, the former wife does not argue that the debt was for a support obligation. Instead, she argues that contempt was appropriate because the court specifically ordered the former husband to take specific actions to effectuate the funds transfer and to facilitate her access to the Vanguard account. We cannot accept this argument.

Although courts can use contempt powers to compel specific actions to facilitate property transfers—they can, for example, use contempt to compel return of personal property, *see, e.g., Morse v. Morse*, 796 So. 2d 1200 (Fla. 3d DCA 2001)—they cannot convert a general payment obligation into something enforceable by contempt by simply characterizing it as an obligation to perform a specific action. In *Marks v. Marks*, for example, this court held that the final judgment's requirement that the husband "shall be responsible for the mortgage payments on the said marital home" was not enforceable by contempt because the requirement was "solely in the nature of a property settlement." 457 So. 2d 1137, 1138 (Fla. 1st DCA 1984)). *But cf. Lee v. Lee*, 710 So. 2d 186, 187 (Fla. 1st DCA 1998) (holding mortgage obligation *was* enforceable by contempt because in that case, the requirement "was a portion and integral part of [husband's] duty to contribute to the support of the child").

4

In this case, we cannot interpret the obligation at issue as anything other than part of a marital property settlement. *See Ball v. Ball*, 440 So. 2d 677, 679 (Fla. 1st DCA 1983). Nor can we interpret the court's orders as anything other than an attempt to compel the former husband make certain payments or face imprisonment. Indeed, the order of incarceration specifically provided that the former husband was to remain in custody "until such time as he purges himself by payment to the former wife . . . in liquid, non-retirement funds." We conclude, therefore, that the court lacked authority to hold the former husband in contempt.

REVERSED.

MAKAR and WINOKUR, JJ., concur.

————————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

————————————————

Therese A. Felth of McKenzie Law Firm, Pensacola, for Appellant.

Laura E. Keene of Beroset & Keene, Pensacola, for Appellee.